Opinion
 

 WALKER, J.
 

 In this opinion we consider the viability of appellants’ claim for injunctive relief filed to prevent common carriers and retailers who sell prepaid phone cards to the public in several-minute blocks from allegedly engaging in misleading and deceptive advertising. Appellants contend that respondents have improperly failed to disclose in their advertising and packaging materials that calls made with the cards will be charged by rounding up to the next full minute, so that, for example, a call lasting one minute and one second will be debited from the card as a two-minute call. Appellants, who brought this action as private attorneys general on behalf of The People of the State of California, claim that respondents’ advertising practices are unfair and misleading within the meaning of Business and Professions Code sections 17200 and 17500.
 
 [1]
 
 In the trial court, they sought to enjoin respondents from continuing these practices and asked for a disgorgement of all “ill-gotten profits” resulting therefrom. Respondents, who include two providers of telephone services
 
 [2]
 
 and four nonprovider phone card retailers,
 
 [3]
 
 successfully demurred to appellants’ first amended complaint on the ground that the action was barred by the filed rate doctrine. This doctrine,
 
 [4]
 
 which will be discussed in greater detail presently, derives from the requirement contained in the Federal Communications Act that common carriers, such as AT & T, file with the Federal Communications Commission (FCC) and keep open for public inspection “all charges [and the] classifications, practices, and regulations affecting such charges.” (47 U.S.C. § 203(a).) As a corollary, the filed rate doctrine prohibits an entity
 
 *329
 
 subject to these requirements from “charging rates ‘for its services other than those properly filed with the appropriate federal regulatory authority.’ [Citation.]” (Ma
 
 rcus
 
 v.
 
 AT&T Corp.
 
 (S.D.N.Y. 1996) 938 F.Supp. 1158, 1169
 
 (Marcus),
 
 affd. (2d Cir. 1998) 138 F.3d 46.) Notwithstanding this mandate, the doctrine presumes the consumer’s knowledge of all lawful rates and bars consumer suits for damages arising out of claims involving those rates, on the premise that a consumer who pays the filed rate has suffered no injury and incurred no damage. (See generally,
 
 Marcus, supra,
 
 at pp. 1169-1170.)
 

 Based upon the filed rate doctrine, the trial court sustained without leave to amend the demurrer of each defendant, denied a motion for reconsideration brought by the retailer defendants and dismissed the action. We decide here that an action which seeks only to enjoin misleading or deceptive practices in the advertising of phone card rates, and seeks no monetary recovery, does not implicate the federal filed rate doctrine and can proceed under sections 17200 and 17500.
 

 We also consider and reject respondents’ several other grounds for demurrer, which were not specifically addressed by the trial court’s ruling. We hold that the complaint is not preempted by the Federal Communications Act, that the California Public Utilities Commission does not have exclusive jurisdiction, that the doctrine of primary jurisdiction does not compel dismissal or stay of the action and that the appellants were not required to exhaust their administrative remedies. Accordingly, we reverse and remand for further proceedings on appellants’ claim for injunctive relief.
 

 Factual and Procedural Background
 

 On June 14, 1996, appellants filed, on behalf of The People of the State of California, a first amended complaint for injunctive relief, alleging that respondents were engaging in unfair business practices and false and misleading advertising, in violation of sections 17200 and 17500. Specifically, they alleged that respondents, who sell prepaid phone cards to the public, act deceptively in that the packaging for the cards does not “reveal to the consumer, prior to purchase, that calls made with these cards are, in fact, rounded up to the next higher minutes.” For example, on the outer packaging of its “PrePaid Card” respondent AT & T states the card is “worth 10 minutes of phone calls in the U.S.” and that “1 minute of calling time requires 1 unit when calling within the U.S.” Appellants contend that these statements are false, deceptive and misleading because of the failure to state that calls are rounded up to the next minute, so that a twenty-second call will be billed at one minute, and a one-minute and ten-second call will be billed at two minutes. Statements made on packaging for phone cards sold by the
 
 *330
 
 remaining respondents are similarly detailed, with copies of the packages attached to the complaint as exhibits.
 
 [5]
 
 In each case, it is alleged that the packages purport to sell more than is actually provided, because the rounding up is not revealed.
 

 Appellants’ first amended complaint alleges that respondents’ practices, characterized as misrepresentations and nondisclosures of material facts, constitute unfair and fraudulent business acts or practices, within the meaning of section 17200 and unfair, deceptive, untrue or misleading advertising likely to have deceived the consuming public, within the meaning of section 17500. The complaint seeks “appropriate equitable relief including but not limited to an order: [¶] (1) Restraining defendants from continuing and/or pursuing the acts described and complained of in this action. [¶] (2) Restraining defendants from failing and/or refusing to undertake an immediate public information campaign to inform members of the general public in California of their policy of rounding up to the nearest minute when billing calls to their respective pre-paid phone cards. [¶] (3) Restraining defendants from failing and/or refusing to disgorge all ill-gotten monies which they obtained in California as a result of the acts set forth in this Complaint.”
 

 Respondents demurred to the first amended complaint, contending that it failed to state a cause of action under the filed rate doctrine because their billing practices, including that of rounding up phone card calls, had been fully disclosed in publicly filed rates, the contents of which the California public was conclusively presumed to know. They also demurred on the ground that the San Francisco Superior Court lacked subject matter jurisdiction over the raised claims, which were within the exclusive jurisdiction of the California Public Utilities Commission, the FCC and the federal courts. The demurrers were sustained without leave to amend and the action dismissed on the ground that the action was barred by the filed rate doctrine. This timely appeal followed.
 

 
 *331
 
 Standard of Review
 

 On appeal from a judgment of dismissal after a demurrer is sustained without leave to amend, we assume the truth of all properly pleaded facts in the complaint.
 
 (First Nationwide Savings
 
 v.
 
 Perry
 
 (1992) 11 Cal.App.4th 1657, 1662 [15 Cal.Rptr.2d 173].) We examine these facts to determine whether the complaint successfully states a cause of action on any available legal theory. If it does, sustaining the demurrer constitutes an abuse of discretion and we must reverse.
 
 (Platt
 
 v.
 
 Coldwell Banker Residential Real Estate Services
 
 (1990) 217 Cal.App.3d 1439, 1444 [266 Cal.Rptr. 601].)
 

 Discussion
 

 We decide here whether the trial court properly concluded that the filed rate doctrine is implicated in the narrow circumstances presented. There is no question that the doctrine has been used repeatedly to bar myriad claims seeking monetary recovery. No case, however, has used the doctrine to bar an action for injunctive relief brought under sections 17200 and 17500, which require no proof of damages in order to be sustained. As we shall discuss, we hold that the filed rate doctrine does not apply to bar the case before us, to the extent of the claim for injunctive relief. We hold that the policies which are furthered by the California statutes would be undermined by the filed rate doctrine’s presumption of a consumer’s omniscience of filed rates, and the resulting immunity to common carriers, regardless of any advertising deception used to lure the consumer.
 

 We will first consider sections 17200 and 17500 and address whether, assuming the truth of the complaint’s well-pleaded allegations, a cause of action has been stated. Next we consider whether the claims fall within and are barred by the filed rate doctrine. Finally, we address the remainder of the grounds raised on demurrer.
 

 Does the Complaint State a Cause of Action Under Sections 17200 and
 
 17500?
 
 [6]
 

 Sections 17200 and 17500 are consumer protection statutes designed, in part, to protect the public by prohibiting false, unfair, misleading
 
 *332
 
 or deceptive advertising.
 
 (Committee on Children’s Television, Inc.
 
 v.
 
 General Foods Corp.
 
 (1983) 35 Cal.3d 197, 211 [197 Cal.Rptr. 783, 673 P.2d 660]
 
 (Committee).)
 
 “To state a cause of action under these statutes for injunctive relief, it is necessary only to show that ‘members of the public are likely to be deceived.’ [Citations.]”
 
 (Ibid.)
 
 Actual deception or confusion caused by misleading statements is not required.
 
 (People
 
 v.
 
 Dollar Rent-A-Car Systems, Inc.
 
 (1989) 211 Cal.App.3d 119, 129 [259 Cal.Rptr. 191].) An “unfair” practice under section 17200 is one “whose harm to the victim outweighs its benefits.”
 
 (Saunders
 
 v.
 
 Superior Court
 
 (1994) 27 Cal.App.4th 832, 839 [33 Cal.Rptr.2d 438]
 
 (Saunders).)
 
 In a similar vein, the term “fraudulent” as used in the section “does not refer to the common law tort of fraud but only requires a showing members of the public ‘ “are likely to be deceived.” ’ [Citation.]”
 
 (Ibid.)
 
 No proof of direct harm from a defendant’s unfair business practice need be shown, such that “[a]llegations of actual deception, reasonable reliance, and damage are unnecessary.”
 
 (Committee, supra,
 
 at p. 211.) Section 17200 has been interpreted broadly to bar all ongoing wrongful business activity, including misleading advertising, in whatever context it presents itself.
 
 (People
 
 v.
 
 Dollar Rent-A-Car Systems, Inc., supra,
 
 211 CaI.App.3d at p. 129.)
 

 Thus, the statutes are meant to protect the public from a wide spectrum of improper conduct in advertising. They may be invoked where the advertising complained of is not actually false, but thought likely to mislead or deceive, or is in fact false. By their breadth, the statutes encompass not only those advertisements which have deceived or misled
 
 because
 
 they are untrue, but also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. We reiterate the point made in
 
 Saunders,
 
 that the concept encompassed in the phrase “likely to be deceived” has no relationship to the concept of common law fraud, which is also sometimes referred to as deception. A fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements are required to state a claim for injunctive relief under section 17200 or 17500. A perfectly true statement couched in
 
 *333
 
 such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under these sections.
 

 We consider the claims here in light of these standards. Of course, we make no factual findings as to the allegations, other than to say that for our purposes on appeal, we must assume the allegations to be true.
 
 (First Nationwide Savings
 
 v.
 
 Perry, supra,
 
 11 Cal.App.4th at p. 1662.) Thus, unless we can say as a matter of law that contrary to the complaint’s allegations, members of the public were
 
 not
 
 likely to be deceived or misled by respondents’ packaging materials, we must hold that appellants stated a cause of action.
 

 Respondents urge us to follow the lead taken by the courts in
 
 Alicke
 
 v.
 
 MCI Communications Corp.
 
 (D.C. Cir. 1997) 111 F.3d 909 [324 App.D.C. 150]
 
 (Alicke)
 
 and
 
 Marcus, supra,
 
 938 F.Supp. 1158, both of which considered state law false advertising and unfair business practice claims against common carriers arising out of the practice of rounding up on customer phone bills.
 
 Alicke
 
 held, in part, that the plaintiff had failed to state a claim for false advertising under the District of Columbia’s Consumer Protection Act “[b]ecause no reasonable customer could actually believe that each and every phone call she made terminated at the end of a full minute, [so] the customer must be aware that MCI charges in full-minute increments only. Accordingly, MCI’s billing practices could not mislead a reasonable customer.”
 
 (Alicke, supra,
 
 at p. 912.) Similarly, in
 
 Marcus
 
 where the plaintiff sued under New York’s Consumer Protection Act, the court held in part that the claims must be dismissed because “AT & T’s failure to disclose the exact duration of the calls on its bills [] is not materially misleading because no consumer reasonably could believe that a designation of a call in whole minutes accurately reflects the length of that call.”
 
 (Marcus, supra,
 
 938 F.Supp. at p. 1174.)
 
 Marcus
 
 also found the plaintiffs’ claims to be insufficient under New York consumer protection law because AT & T’s advertising and billing practices had not resulted in any damage to plaintiffs.
 
 (Ibid.)
 
 This reasoning was expanded upon by the appellate opinion affirming
 
 Marcus,
 
 in which the Second Circuit held that the plaintiffs’ claims were property dismissed because the filed rate doctrine’s conclusive presumption precluded the plaintiffs from showing that they had
 
 reasonably relied
 
 on AT & T’s statements.
 
 (Marcus
 
 v.
 
 AT & T
 
 (2d Cir. 1998) 138 F.3d at p. 46.)
 

 We decline to conclude on the facts alleged here that no reasonable consumer of prepaid phone cards would be likely to be misled or deceived by respondents’ practices. The rationale of the holdings in
 
 Alicke
 
 and
 
 Marcus
 
 rested in part upon the consumers’ ability to read the phone bills provided by
 
 *334
 
 the respondents there. With this document before them, they could see that only full minutes had been charged, but could not reasonably believe that each call they had made had been in increments of precise minutes. As noted by the court in
 
 Marcus,
 
 the only reasonable conclusion which could be drawn was that the company was rounding up or down. The situation before us differs in significant respect. The phone cards in question, whose outer packagings do not reveal the practice of rounding up, are
 
 prepaid. A
 
 consumer cannot read any materials provided by the carrier with the card
 
 before
 
 buying the card, which will advise him or her of the practice. Based on the advertising a consumer will not know that whole minutes are being credited for each fraction of a minute until the card has been used. We emphasize that it is immaterial under the statutes pursuant to which appellants have sued whether a consumer has been
 
 actually misled
 
 by an advertiser’s representations. It is enough that the language used is likely to deceive, mislead or confuse.
 
 (People
 
 v.
 
 Dollar Rent-A-Car Systems, Inc., supra,
 
 211 Cal.App.3d at pp. 129-130.) We conclude that the practices alleged here were likely to mislead, confuse or deceive members of the
 
 [7]
 

 In addition, the decisions in
 
 Alicke
 
 and
 
 Marcus
 
 are premised upon a finding that it was not reasonable for plaintiffs to rely only on defendants’ billing format in formulating their understanding of the amounts they were being billed, because of the independent knowledge they must have possessed about their own calling habits. The appellate opinion affirming
 
 Marcus
 
 held similarly that plaintiffs could not reasonably rely on an understanding of the rates that was different from those filed with the FCC. As explained above, the appellants here are not required to allege reasonable reliance in order to sustain their claim under the California statutes. This is so because the statutes seek to protect against the
 
 likelihood
 
 that the public will be deceived, not against the
 
 actual
 
 harm incurred by the public. For this reason, “[t]he court may impose liability and civil penalties without individualized proof of reliance . . . .”
 
 (People
 
 v.
 
 Dollar Rent-A-Car Systems, Inc., supra,
 
 211 Cal.App.3d at p. 131.) For this independent reason,
 
 Alicke
 
 and
 
 Marcus
 
 do not support respondents’ position.
 

 Are These Well-pleaded State Claims Barred by the Filed Rate Doctrine?
 

 Respondents contend that appellants’ action implicates phone card rates as filed with the FCC and therefore is preempted or barred by the federal
 
 *335
 
 scheme. To consider this argument we examine the relevant federal statutes and their purposes. If appellants’ action seeks redress for matters completely within the purview of federal law, then they have no recourse under California’s unfair business practices and deceptive advertising statutes.
 

 Respondents contend that appellants’ claims necessarily and exclusively arise under the Federal Communications Act
 
 [8]
 
 (the Act) which aims to regulate “interstate and foreign commerce in communication by wire and radio so as to make available, so far as possible, to all the people of the United States a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges.” (47 U.S.C. § 151.) As noted above, in what has been described as “the heart of the common-carrier section of the Communications Act”
 
 (MCI Telecommunications Corp.
 
 v.
 
 American Telephone & Telegraph Co.
 
 (1994) 512 U.S. 218, 229 [114 S.Ct. 2223, 2231, 129 L.Ed.2d 182]), the Act requires that common carriers file with the FCC and keep open for public inspection “schedules showing all charges . . . and showing the classifications, practices, and regulations affecting such charges.” (47 U.S.C. § 203(a).) Common carriers are prohibited, without exception, from charging rates higher or lower than those contained in the filed schedules. (47 U.S.C. § 203(c);
 
 Marcus, supra,
 
 938 F.Supp. at p. 1166.) And consumers are, for their part, presumed to know the contents of the filed rate. The sum of these concepts which, as we have stated, have become known as the filed rate doctrine, is that common carriers who file their rates with the FCC, as they are required to do by law, are insulated from lawsuits challenging those rates and from court orders having the effect of imposing a rate other than that filed with the FCC.
 
 (Weinberg
 
 v.
 
 Sprint Corp.
 
 (D.N.J. 1996) 165 F.R.D. 431, 438, fn. 5.)
 

 It has been said that the doctrine furthers two legitimate goals: nondiscriminatory rate setting and agency autonomy in rate setting without court interference.
 
 (Wegoland Ltd.
 
 v.
 
 NYNEX Corp.
 
 (2d Cir. 1994) 27 F.3d 17, 21.) The Act is intended to protect those goals, and to occupy the field for claims which implicate them. The Act, however, is not completely preemptive. It contains a savings clause which provides that nothing contained therein “shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.” (47 U.S.C. § 414.) This clause has been interpreted as “preserv[ing] only state claims that address obligations different from those created by the Communications Act.”
 
 (Marcus, supra,
 
 938 F.Supp. at p. 1168.) Thus, the question we pose is whether appellants’ claims address obligations the same as or different from those created by the Act.
 

 
 *336
 
 Without a doubt, if appéllants’ complaint concerned the propriety of the rounding up practice itself, their claim would be barred by the filed rate doctrine. This would be so whether the gravamen of such a complaint was based in contract or on a theory of fraud.
 
 (Marcus, supra,
 
 938 F.Supp. at p. 1169 [doctrine trumps contract defenses and fraud claims];
 
 Porr
 
 v.
 
 NYNEX Corp.
 
 (1997) 230 A.D.2d 564, 571 [660 N.Y.S.2d 440] [no general “fraud exception” to the filed rate doctrine].) A claim attacking rate practices made public in the filed tariff schedules asks the court to involve itself in the rate-making process, which it cannot do.
 
 (Wegoland, Ltd.
 
 v.
 
 NYNEX Corp.
 
 (S.D.N.Y. 1992) 806 F.Supp. 1112, 1115.) Likewise, a claim seeking damages against a provider of services has the ultimate effect of seeking a different and discriminatory rate. This, too, is prohibited.
 
 (Id.
 
 at p. 1119;
 
 Marcus, supra,
 
 938 F.Supp. at p. 1170 [“Any remedy [for a fraud claim] that requires a refund of a portion of the filed rate ... is barred.”].)
 

 What of a matter such as the one before us, which makes no claim of fraud in the
 
 charged
 
 rate, nor a claim of breach of contract for services, nor an attack on the reasonableness of the rounding up practice, but instead complains of improper advertising practices in the promotion of the services and seeks to enjoin the further use of those practices? As stated by the court in
 
 Marcus'.
 
 “Plaintiffs’ request for an injunction requiring AT & T to disclose its billing practices in materials other than the tariffs is not barred by the filed rate doctrine, because that type of relief would have no impact on the tariff charged. It would not require AT & T to charge more or less than the filed rate, nor would it permit a customer to pay more or less than the filed rate. Nor would plaintiffs’ claims for injunctive relief to remedy AT &.T’s non-disclosure be preempted by the Communications Act, which requires common carriers to disclose their rates in the filed tariffs only. The Act does not prohibit a state from requiring common carriers to disclose their rates elsewhere, and any such state obligation would not frustrate [the] Act’s purposes of uniformity and agency ratemaking.” (938 F.Supp. at p. 1172.) Notwithstanding this pronouncement, with which we agree, the court in
 
 Marcus
 
 upheld the dismissal of the action, because the plaintiffs there had not satisfied the requirements for seeking an injunction from a federal court (irreparable harm and inadequate legal remedies), nor had they established reliance or damages, as required by New York’s unfair practices act (see fn. 7,
 
 ante.)
 
 In contrast, as we have previously stated, neither reliance nor damages are prerequisite to an action under California’s unfair practices act.
 

 The State of California has no requirement that common carriers disclose their rates anywhere other than in the rate schedules filed with the Public Utilities Commission. Nonetheless, businesses are prohibited from engaging
 
 *337
 
 in advertising practices which are potentially misleading to the public, so that if they choose to promote their rates, they must do so with sufficient accuracy that they do not risk misleading or deceiving the consumer. We hold that under California’s unfair business practices and deceptive advertising provisions respondents are prohibited from disseminating misleading or deceptive packaging materials with their prepaid phone cards. Appellants are entitled to seek to enjoin the alleged practice, and respondents’ demurrers to this claim were erroneously sustained.
 

 Scope of Relief Available
 

 Appellants have asked for an injunction to prevent respondents from continuing their allegedly deceptive practices, and have asked for disgorgement of respondents’ allegedly ill-gotten gains. Throughout this opinion we have alluded to the type of relief which may be available to appellants under sections 17200 and 17500 without implicating the filed rate doctrine bar. We explicitly repeat our holding: To the extent appellants do not seek a monetary recovery, they may proceed with their action for injunctive relief. They may
 
 not
 
 seek to recover any money from respondents, whether they label their request one for disgorgement or otherwise. The net effect of imposing any monetary sanction on the respondents will be to effectuate a rebate, thereby resulting in discriminatory rates. As we have seen, this is a matter which is strictly of federal concern under the Act, and is, therefore, barred by the filed rate doctrine.
 

 Appellants insist that they do not run afoul of the filed rate doctrine by asking for disgorgement because they do not seek a rebate or refund, which they concede would violate the filed rate doctrine’s prohibition against discriminatory rates. They seek, instead, that broad equitable remedy which is allowed by section 17203: “Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter,
 
 or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.”
 
 (Italics added.)
 

 Respondents contend that any monetary award to appellants would be tantamount to a rebate which necessarily would result in rate discrimination against those not receiving a portion of the award. They argue, first, that there are no ill-gotten gains to disgorge, because the rates charged are those filed with the FCC, and are presumptively correct.
 
 (Marcus, supra,
 
 938
 
 *338
 
 F.Supp. at p. 1170 [a customer who has paid the filed rate has suffered no legally cognizable injury].) Second, they contend that any calculation of the appropriate amount to disgorge would require the trial court’s determination of how much of the phone card profits respondents can keep, and how much they must relinquish, which would necessitate a finding regarding the reasonableness of the rate charged. Such an inquiry would contravene the presumption of the filed rate’s correctness and would enmesh the trial court in a determination of the reasonableness of the rates, a matter within the exclusive province of the FCC and the California Public Utilities Commission.
 

 In response to these concerns, appellants urge the use of a “fluid recovery” which would not be dependent upon a calculation or consideration of reasonable rates. Instead, for example, the court could order disgorgement of all respondents’ profits or all sums collected from sales of the phone cards. These sums, appellants insist, would not represent damages paid for an injury, but instead would serve as a punishment for past and a deterrent from future misleading advertising campaigns.
 

 In deciding this question we think it important to consider the unfair trade practice act’s scheme for allowing monetary awards. In general, the unfair competition provisions allow for such equitable orders “as may be necessary to
 
 restore
 
 to any person in interest any money or property, real or personal, which may have been acquired” by means of unfair competition or unlawful advertising practices. (§§ 17203, 17535, italics added.) The statutory scheme also allows for the imposition of civil penalties of up to $2,500 per violation in actions brought by certain governmental agencies. (§§ 17206, 17536.) In addition, it provides for a $6,000 civil penalty to be imposed against any person who intentionally violates any injunction issued pursuant to section 17203 or 17535. (§§ 17207, 17535.5.) These $2,500 and $6,000 sanctions, having been labeled by the Legislature as “civil penalties,” can be understood as a form of punishment imposed for a defendant’s wrongdoing.
 

 It has been held that the broad scope of remedies allowed by section 17203 includes those orders which provide restitution to the victim of unfair competition.
 
 (State Farm Fire & Casualty Co.
 
 v.
 
 Superior Court
 
 (1996) 45 Cal.App.4th 1093, 1102 [53 Cal.Rptr.2d 229].) Indeed, the section itself provides for the “restoration” of money or property acquired by means of unfair competition. We think it significant that the Legislature chose to use the word “restore” in labeling that which an offending defendant may be ordered to do. The verb, as defined by the Oxford English Dictionary, means “[t]o give back, to make return or restitution of (anything previously taken away or lost).” (XIII Oxford English Dict. (2d ed. 1989) p. 755.) Taken in
 
 *339
 
 the context of the statutory scheme, the definition suggests that section 17203 operates only to return to a person those
 
 measurable amounts
 
 which are
 
 wrongfully taken
 
 by means of an unfair business practice. The intent of the section is to make whole, equitably, the victim of an unfair practice. While it may be that an order of restitution will also serve to deter future improper conduct, in the absence of a measurable loss the section does not allow the imposition of a monetary sanction merely to achieve this deterrent effect. Nor is the section intended as a punitive provision, though it may fortuitously have that sting when properly applied to restore a victim to wholeness.
 
 [9]
 

 Even in those cases which have allowed for a fluid recovery, as opposed to a restoration to identified individuals or classes, the amount being restored has been objectively measurable as that amount which the defendant would not have received but for the unfairly competitive practice. (See, e.g.,
 
 People
 
 v.
 
 Thomas Shelton Powers, M.D., Inc.
 
 (1992) 2 Cal.App.4th 330 [3 Cal.Rptr.2d 34] [fluid recovery fund for profits obtained by selling moderate income housing at excessive price];
 
 State of California
 
 v.
 
 Levi Strauss & Co.
 
 (1986) 41 Cal.3d 460 [224 CaLRptr. 605, 715 P.2d 564] [fluid recovery of amounts overcharged for product];
 
 People
 
 ex rel.
 
 Smith
 
 v.
 
 Parkmerced Co.
 
 (1988) 198 Cal.App.3d 683 [244 Cal.Rptr. 22] [amount of illegally collected security deposits repaid to actual victims if possible, with balance going to fluid recovery fund].)
 

 It is in this analysis that appellants’ argument falters. If the court were to fashion a fluid recovery in this case, how would the amount be measured? What have respondents obtained which they are not entitled to keep? Appellants assert that the court could, if it chose to, order respondents to disgorge
 
 all
 
 the money earned from phone card sales, because if they had not advertised misleadingly, members of the public would not have purchased the cards at all. The fact remains, however, that once the cards were purchased and used, the members of the public received
 
 exactly what they paid for.
 
 The filed tariffs allow the practice of rounding up, so that a card lasts only as long as the number of full minute units debited, regardless of actual “talk time.” This appellants do not dispute. They make clear, in fact, that they are not attacking the practice of rounding up, as to do so would trigger the application of the filed rate doctrine. That said, there are no ill-gotten profits to restore. Any amount taken away from respondents for services provided using properly filed tariffs would amount to a rebate. This, as we have seen, is not permitted.
 

 
 *340
 
 To summarize, the notion of restoring something to a victim of unfair competition includes two separate components. The offending party must have obtained something to which it was not entitled
 
 and
 
 the victim must have given up something which he or she was entitled to keep. Because the filed rates charged by respondents are presumptively correct, a consumer who uses a prepaid phone card obtains the full value of what was paid for and therefore has given up nothing, regardless of whether he or she was improperly induced to purchase the card in the first place. Any attempt to calculate a monetary amount to be paid on behalf of those who purchased the cards would necessarily result in a refund or rebate of properly collected fees for services. This would enmesh the court in the rate-setting process and directly contravene the filed rate doctrine. Appellants are not entitled to seek restoration of any money under section 17203.
 

 Other Grounds for Demurrer
 

 We have held that appellants’ claim for injunctive relief states a cause of action under sections 17200 and 17500 and does not implicate in any manner the reasonableness of respondents’ practice of rounding up. It follows, therefore, that respondents’ other grounds for demurrer that jurisdiction rests exclusively or primarily with the California Public Utilities Commission and/or the FCC and the federal courts cannot be sustained, as these theories are all dependent upon a conclusion that rate setting is implicated in the action. The superior court has jurisdiction to decide the matter.
 

 Viability of Action Against Retailer Respondents
 

 The retailer respondents have filed a separate brief claiming, as they did in seeking reconsideration before the trial court, that they cannot be held to answer appellants’ complaint, as the fixed rate doctrine has no applicability to noncommon carriers. Again, because we decide that this action can go forward without implicating that doctrine, we need not reach the point raised. An action claiming unfair business practices and misleading advertising under California law can proceed against these respondents as well.
 

 Disposition
 

 The trial court’s orders sustaining respondents’ demurrers and dismissing appellants’ first amended complaint are reversed. The matter is remanded for further proceedings on appellants’ claim for an injunction, but not on their
 
 *341
 
 claim for restitution under sections 17203 and 17535. Appellants to recover costs on appeal.
 

 Corrigan, Acting P. J., and Parrilli, J., concurred.
 

 [1]
 

 All statutory references are to the Business and Professions Code unless otherwise indicated.
 

 [2]
 

 AT & T Corporation and Sprint Communications Co. L.P.
 

 [3]
 

 Dayton Hudson Corporations (which owns and operates Target stores), BLT Technologies, Inc. (which provides network services for 7-Eleven and Longs Drugs), Southland Corporation (which is the franchiser of 7-Eleven stores) and Longs Drug Stores Corporation.
 

 [4]
 

 The filed rate doctrine is also known as the filed tariff doctrine.
 

 [5]
 

 As to the remaining respondents, the complaint alleges as follows: The packaging for Sprint’s prepaid card, the “Spree instant foncard,” states that the $10 phone card is worth 20 minutes of domestic calls, without specifying that calls are rounded up to the next full minute; the packaging for Dayton Hudson’s Target phone card, the “Hotline Pre-Paid Calling Card,” is said to provide 40 minutes of long distance calls within the continental United States, again without revealing the practice of rounding up; Longs’s card, the “Talk ’n Toss,” has packaging claiming “big savings,” “30 minutes,” “$9.99,” “one low rate throughout the United States” and “no surcharges” but does not reveal the practice of rounding up; finally, Southland Corporation’s 7-Eleven, whose prepaid phone card network services are provided by respondent BLT, has a phone card with outer packaging claiming 15 minutes worth of calls. Once the sealed outer packaging is opened the inner packaging reveals that “All calls are rounded up to the next whole minute.”
 

 [6]
 

 Section 17200: “As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.” Section 17500: “It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be
 
 *332
 
 made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, any statement, concerning such real or personal property or services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any such person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell such personal property or services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both.”
 

 [7]
 

 Marcus
 
 also differs from this case because the New York’s Consumer Protection Act requires that the misleading or deceptive practice complained of result in an injury to plaintiff.
 
 (Oswego Laborers’
 
 v.
 
 Marine Midland Bank
 
 (1995) 85 N.Y.2d 20, 25 [623 N.Y.S.2d 529, 647 N.E.2d 741].) The holding in
 
 Marcus
 
 was also based in part on the conclusion that plaintiffs had suffered no injury. (Marcus,
 
 supra,
 
 938 F.Supp. at pp. 1173-1174.) Furthermore, New York’s act contains a specific exclusion for actions attacking advertisements which comply with Federal Trade Commission rules and regulations. (N.Y. Gen. Bus. Law §§ 349(d) and 350-d.) California’s statutes contain no such requirement or exclusion.
 

 [8]
 

 47 United States Code section 151 et seq.
 

 [9]
 

 As noted, sections 17206, 17207, 17535.5 and 17356 operate to impose monetary penalties.