Filed 12/23/25  P. v. MV Realty PBC CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MV REALTY PBC, LLC et al.,<br><br>    Defendants and Appellants. | B341121<br><br>(Los Angeles County Super. Ct. No. 23STCV30464) |

APPEAL from an order of the Superior Court of Los Angeles County, Kenneth R. Freeman, Judge.  Affirmed.

Saul Ewing, William E. Adams, Carol Chow, Dana M. Silva; AXS Law Group LA, Geoffrey T. Stover, and James K. Kawahito for Defendants and Appellants.

Rob Bonta, Attorney General, Nicklas A. Akers, Senior Assistant Attorney General, Tina Charoenpong, Gabriel Schaeffer, Andrew Wiener, Monica J. Zi, Minh U. Le, Deputy Attorneys General; John T. Savrnoch, District Attorney for the

County of Santa Barbara, Christopher B. Dalbey and Morgan S. Lucas, Senior Deputy District Attorneys; Allison Haley, District Attorney for the County of Napa, and Patrick Collins, Deputy District Attorney, for Plaintiff and Respondent.

———————————

## I. INTRODUCTION

MV Realty[1] appeals from a preliminary injunction which, among other things, required it to terminate within 30 days every memorandum[2] (an encumbrance on title that secured its real estate commission) that it had recorded on the properties of California homeowners. We affirm.

---

[1] The named defendants in this case are 10 corporations and 100 individual Doe defendants that we refer to collectively as MV Realty.

[2] The memorandum is the "Memorandum of MVR Homeowner Benefit Agreement" recorded with the county registrar shortly after the defendants entered into the "MVR Homeowner Benefit Agreement" (agreement) with a consumer, which we describe further below.

## II. FACTUAL BACKGROUND[3]

MV Realty is a Florida real estate brokerage company with two California subsidiaries. In 2022, MV Realty began marketing its "Homeowner Benefit Program" (the program) that sold "Forward Listing Contracts"[4] to California homeowners. The program offered a cash payment to homeowners, of approximately .27 percent of their home value, in exchange for the homeowners granting MV Realty the exclusive right to sell their home. MV Realty marketed the program as a "one-of-a-kind, innovative program that allows homeowners the chance to receive an immediate cash payment by agreeing that [MV Realty] will be your Real Estate agency if and when you decide to sell your home in the future" with "no credit check," "[no] [r]equirement to [s]ell [y]our [h]ome," and "no obligation to repay the money . . . ." The agreement required a homeowner to use MV Realty as his or her listing agent if the homeowner sold the home within the next 40 years, or else pay a three percent penalty of either the sale price or of the home's initial valuation by MV Realty, whichever was higher. This penalty was called the "Early Termination Fee."

---

[3] We recite the facts in the light most favorable to the prevailing party. (*Shoemaker v. County of Los Angeles* (1995) 37 Cal.App.4th 618, 625.)

[4] The forward listing contract as implemented by MV Realty was an agreement to enter into a real estate listing agreement at a future date at a predetermined rate of commission. MV Realty launched the program in October 2018, but did not market it in California until the end of 2021.

The agreement stated that the homeowner's "obligations hereunder shall constitute covenants running with the land" and granted MV Realty "a lien and security interest" in the property as security for the homeowner's obligations under the contract. The agreement obligated MV Realty to "consider in good faith any request from [the homeowner] to facilitate such refinancing or new mortgage by subordinating the lien of this [a]greement to the refinanced or new mortgage." MV Realty was not obligated to subordinate the lien, only to consider the request in good faith. The memorandum was attached to the agreement as an exhibit and, like the agreement, explained that the "[a]greement restricts transfers of the Property and creates a lien and security interest in the Property to secure the obligations of [the homeowner] thereunder in the amount of the Early Termination Fee (as such term is defined in the [a]greement)."

MV Realty recorded the memorandum with the county clerk shortly after the agreement was executed. Internally, MV Realty referred to the memorandum as a lien and promoted it to investors as a security feature of a future revenue stream. Externally, underwriters, prospective lenders, and escrow officers treated the memorandum as a lien on the property.

MV Realty, however, told prospective customers that the memorandum was not a lien. On its website and in its marketing e-mails, MV Realty stated it would *not* record a lien on the homeowner's home; it would record only a memorandum to serve as public notice of the homeowner's obligations under the agreement. MV Realty trained its telemarketers to tell homeowners it would not record a lien on their homes.

4

# III. PROCEDURAL BACKGROUND

On December 13, 2023, the People filed a complaint against MV Realty alleging, among other things, violations of the Unfair Competition Law (UCL) and False Advertising Law (FAL) (Bus. & Prof. Code[5], §§ 17200, et seq., 17500, et. seq.). The complaint sought permanent injunctive relief, restitution, and civil penalties. As relevant for purposes of this appeal, the complaint alleged that MV Realty deceived homeowners into accepting a small cash payment in exchange for signing unlawful real estate contracts secured by fraudulent liens that MV Realty affirmatively misrepresented to homeowners as not being liens. These contracts required homeowners to use MV Realty as their listing agent if they sold their homes within 40 years or pay a penalty of three percent of their home value.

On July 3, 2024, the People moved for a preliminary injunction based on MV Realty's violations of the UCL and the FAL. The People contended, among other things, that there was a reasonable probability that it would prevail on its theory that MV Realty had engaged in illegal conduct by "[d]eceiving homeowners that it will not record liens on their homes, but then recording liens in the form of its [memorandum]." The People also argued that MV Realty's fraudulently placed liens caused ongoing harm to over 1,400 California homeowners who, as MV Realty explained in an investor presentation it disseminated in September 2020, are "unable to convey clean title without receiving a lien release from MV Realty."

The People sought an injunction requiring that:

---

[5] Further statutory references will be to the Business and Professions Code unless otherwise stated.

5

"1)     [MV Realty] shall record terminations of all [memoranda] filed on the properties of California homeowners by the earlier of:

"a.     Thirty (30) days from the date of the Court's order, or

"b.     Within five (5) days of notification from any California homeowner, or any agent acting on their behalf, who requires a termination to be recorded in order to proceed with any transaction related to the homeowner's property, including but not limited to a loan, refinancing, or sale of the property.

"2)     [MV Realty] shall not record any encumbrance relating to a[n agreement] on the property of any California homeowner for the pendency of this litigation.

"3)     [MV Realty] shall not enforce any [agreement] entered into with a California homeowner for the pendency of this litigation."

The People supported their motion with documents that demonstrated how the agreement and memorandum operated. In addition, the People submitted declarations from over a dozen homeowners who contracted with MV Realty, and several more from declarants whose family members contracted with the company.[6] Homeowners stated they learned *after* contracting with MV Realty that it had placed a lien on their home; and that they never would have entered into the agreement if MV Realty had explained that to them in advance. A few explained how the

_____

[6]     One declarant stated MV Realty contracted with his father despite knowing his father suffered from dementia and lacked the capacity to contract. A second stated MV Realty contracted with her uncle, who was cognitively impaired by a traumatic brain injury. And a third stated her elderly father did not understand the contract with MV Realty.

lien became an obstacle to their later obtaining a loan secured by the property, and they eventually gave up on refinancing. Others stated they were forced to pay the Early Termination Fee, which was ten times the amount of the consideration they had received from MV Realty, before they could secure refinancing. Many shared their views that MV Realty lied to them, that they no longer trusted MV Realty to sell their home, and that they felt trapped by the agreement. Almost all homeowner declarants stated they had not seen the 12-page agreement until a notary, who could not explain the terms of the agreement, brought the document to their home to be signed.

MV Realty opposed the motion for preliminary injunction. It denied that it had engaged in a deceptive practice and disagreed with the People's characterization of the memorandum as a lien. Contrary to the People's allegations that its conduct prevented homeowners from accessing equity in their home, MV Realty stated that it had "already assisted scores of California homeowners in completing refinancing transactions." MV Realty submitted 51 declarations from California customers who stated that they were not misled by MV Realty and that they were aware that "MV Realty ha[d] the right to record th[e] [m]emorandum on my property records to provide notice of the agreement."

MV Realty also provided a Disclosure Spreadsheet identifying when each of the California consumers who executed an agreement first received a copy of the agreement. The spreadsheet reflected that MV Realty did not provide the agreement to 80 percent of California homeowners who signed it until the moment a notary presented it to them. MV Realty admitted homeowners had difficulty refinancing because of the

memorandum and provided the trial court with evidence that some lenders rejected MV Realty's offers to subordinate the memorandum. MV Realty also submitted a copy of a "Termination of Memorandum of MVR Homeowner Benefit Agreement" (termination) which explained that the memorandum was an "encumbrance."

On September 13, 2024, following a hearing, the trial court issued a 43-page ruling and order that granted the People's motion for preliminary injunction. The court determined the People had shown a reasonable probability of prevailing on the merits on its claims that MV Realty had violated the UCL and FAL. Specifically, the court found that "[MV Realty] knew the memoranda operated as liens, represented this to their investors, but materially misrepresented the effect of the memoranda to the Homeowners."

The trial court also stated that it was "not persuaded that [MV Realty has] shown grave or irreparable harm to warrant denial of the preliminary injunction" but added that "notwithstanding the conflicts in the evidence . . . , [the court] is not prohibited from issuing an injunction where the proper showing is made." The court then addressed MV Realty's argument that the issuance of the injunction would "essentially force MV Realty to cease business in California and require it to terminate *thousands* of [m]emoranda . . . ." The court reasoned, "if the memoranda . . . themselves do not comply with the UCL, FAL, and the California Real Estate Law, and have been procured through unlawful means (a finding the Court makes only for purposes of issuing the preliminary injunction, and not for an ultimate merits determination), this is not a consideration for the Court in assessing the balancing of the harms to the

8

parties. In any event, the Court determines that the harm to the public should the injunction not issue outweighs the harm to [MV Realty] if the injunction is issued."

MV Realty timely filed an appeal.

On November 22, 2024, MV Realty petitioned this court for a writ of supersedeas. On December 20, 2024, we granted the petition in part, staying paragraph 1(a) of the preliminary injunction pending resolution of this appeal.

## IV. DISCUSSION

### A. *Consumer Protection Law*

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the FAL]." (§ 17200.) The FAL also prohibits false or misleading advertising, when defendant knew or should have known the statement was misleading. (§ 17500.) "[T]o state a claim under either the UCL or the [FAL], based on false advertising or promotional practices, 'it is necessary only to show that "members of the public are likely to be deceived."'" (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 951.) "Actual deception or confusion caused by misleading statements is not required." (*Day v. AT & T Corp.* (1998) 63 Cal.App.4th 325, 332 (*Day*); accord, *People v. Dollar Rent-A-Car Systems Inc.* (1989) 211 Cal.App.3d 119, 131 ["The court may impose liability and civil penalties without individualized proof of reliance, deception and injury . . ."].)

9

The UCL and FAL are broadly enforced to protect the public. For example, "[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable . . . ." (*Day*, *supra*, 63 Cal.App.4th at pp. 332–333.) The violation occurs when the deceptive statement is made; it cannot be eliminated by later disclosures. (E.g., *Chern v. Bank of America* (1976) 15 Cal.3d 866, 876 [defendant's eventual disclosure of actual interest rate in its Truth in Lending Statement did not excuse its practice of initially quoting a lower rate].)[7]

Both the UCL and the FAL provide for injunctive relief, granting courts "extraordinarily broad" remedial power to enjoin prohibited business practices "in whatever context they may occur." (*Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy* (1992) 4 Cal.App.4th 963, 972 (*Consumers Union*); §§ 17203, 17535.)

B.    *Preliminary Injunctions and Standard of Review*

The legal framework for issuing a preliminary injunction where the government seeks to enjoin a violation of law is set forth in *IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63 (*IT*

---

[7]    In addition, the UCL borrows violations of other laws and treats these violations as "unlawful practices" independently actionable under the UCL. (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 383.) The People allege defendants violated numerous laws, including the Truth in Lending Act (15 U.S.C. § 1601 et seq., and 12 C.F.R. § 1026 et seq.) and sections of California real estate law (e.g., §§ 10130, et seq., 10147.5, 10176, subd. (g)). We do not address those claims.

*Corp*.).  In that case, the Supreme Court explained:  "Where a governmental entity seeking to enjoin the alleged violation of an ordinance which specifically provides for injunctive relief establishes that it is reasonably probable it will prevail on the merits, a rebuttable presumption arises that the potential harm to the public outweighs the potential harm to the defendant.  If the defendant shows that it would suffer grave or irreparable harm from the issuance of the preliminary injunction, the court must then examine the relative actual harm to the parties.

"Once the defendant has made such a showing, an injunction should issue only if—after consideration of both (1) the degree of certainty of the outcome on the merits, and (2) the consequences to each of the parties of granting or denying interim relief—the trial court concludes that an injunction is proper. . . .  [¶]  The ultimate goal of any test to be used in deciding whether a preliminary injunction should issue is to minimize the harm which an erroneous interim decision may cause.  [Citation.]"  (*IT Corp.*, *supra*, 35 Cal.3d at pp. 72–73, fn. omitted.)  The *IT Corp.* framework applies to prohibitory and mandatory injunctions.  (*People v. Uber Technologies, Inc.* (2020) 56 Cal.App.5th 266, 285 (*Uber*); *City of Corona v. AMG Outdoor Advertising, Inc.* (2016) 244 Cal.App.4th 291, 299 (*City of Corona*).)

We review the issue of a preliminary injunction for abuse of discretion.  (*City of Corona*, *supra*, 244 Cal.App.4th at p. 298.)  Under this standard, we do not reweigh conflicting evidence; we defer to the trial court's factual findings if they are supported by substantial evidence.  (*Id.* at pp. 298–299.)  A trial court has not abused its discretion unless it has ""'exceeded the bounds of

11

reason or contravened the uncontradicted evidence. [Citations.]"'" (*IT Corp.*, *supra*, 35 Cal.3d at p. 69.)

The burden is on the party challenging the injunction to make a "clear showing" that the trial court abused its discretion. (*IT Corp.*, *supra*, 35 Cal.3d at p. 69.) We reverse an order granting an injunction if we determine that one of the two interrelated factors—the degree of certainty of the outcome on the merits or the consequences to each of the parties of granting or denying interim relief—do not support the trial court's order. (*Board of Supervisors v. McMahon* (1990) 219 Cal.App.3d 286, 295–296 (*McMahon*).) "Where, as here, the preliminary injunction mandates an affirmative act that changes the status quo, we scrutinize it even more closely . . . ." (*Id.* at p. 295, fn. omitted.)

C.      *Analysis*

1.      Reasonable Probability of Prevailing on the Merits

MV Realty contends the trial court erred when it found the People were likely to prevail on the merits of their claims that it intentionally misrepresented the memorandum as a notice instead of acknowledging that it acted as a lien and security interest, in violation of the UCL and the FAL. According to MV Realty, because it properly disclosed to homeowners that the memoranda would be recorded with the county recorder's office, it made no material misrepresentations to homeowners. MV Realty further contends that the memorandum was not a lien as a matter of law, such that MV Realty did not engage in unlawful

12

conduct when it did not disclose the existence of a lien. We disagree.

The trial court found the evidence demonstrated that "[MV Realty] knew the memoranda operated as liens, represented this to [its] investors, but materially misrepresented the effect of the memoranda to the Homeowners." Substantial evidence supports the court's finding. Investor presentations, financial statements, company spreadsheets and internal e-mails all described the memorandum as a lien recorded to secure commission by preventing a homeowner from transferring title without receiving a lien release from MV Realty. Yet MV Realty trained its sales agents to assure homeowners that a memorandum was merely a notice and that MV Realty would not record a lien on their property.

According to MV Realty, the memorandum was not a lien, as a matter of law, because a lien is a legal claim against a property to secure the payment of a debt and, according to MV Realty, the agreement does not create a debt. Instead, MV Realty characterizes the memorandum as a notice disclosing its contract rights, i.e., that the homeowner is liable to pay MV Realty three percent of the value of the home upon sale or transfer if the consumer does not use MV Realty in the real estate transaction. If the homeowner breaches the agreement, then MV Realty has the right to file a lien on the property. We disagree.

"A lien is a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance of an act." (Civ. Code, § 2872.) Here, the agreement provided that "Property Owner hereby grants and conveys unto [MV Realty] as a lien and security

13

interest in and to the Property to secure the obligations of Property Owner hereunder to [MV Realty]." The memorandum further stated, "The [a]greement restricts transfers of the Property and creates a lien and security interest in the Property to secure the obligations of Property Owner thereunder in the amount of the Early Termination Fee (as such term is defined in the [a]greement)." The memorandum thus imposed a charge on real property as security for the performance of a homeowner's performance of its obligations under the agreement and therefore satisfied the definition of a lien set forth at Civil Code section 2872.

Moreover, numerous internal documents show that MV Realty referred to the memorandum as a lien and treated it as such. MV Realty marketed its portfolio of agreements to investors as a revenue stream of future commission payments secured by liens on real property. Underwriters who analyzed the memorandum instructed their agents to treat it as a lien or a mortgage. Substantial evidence therefore supported the trial court's finding that the People had demonstrated they were likely to prevail on the merits of their claims that MV Realty intentionally misrepresented the memorandum as a notice instead of acknowledging that it acted as a lien.[8]

---

[8]     Having concluded that substantial evidence supports the trial court's finding that MV Realty made material misrepresentations regarding the nature of the memoranda sufficient to constitute a violation of the UCL and FAL, we need not consider the merits of MV Realty's challenges to the alternative theories of liability.

## 2.    Grave or Irreparable Harm

MV Realty next contends that the People "failed to sustain [their] burden of demonstrating irreparable harm to warrant the issuance of a preliminary injunction." (Boldface omitted.) MV Realty's argument ignores that under the *IT Corp.*, *supra*, 35 Cal.3d 63 framework, once a court determines the plaintiff is likely to prevail on the merits, a rebuttable presumption arises that the potential harm to the public outweighs the potential harm to the defendant and the injunction should issue *unless* the *defendant* shows it would suffer grave or irreparable harm from the issuance of the preliminary injunction. If the defendant can show grave or irreparable harm, the court must examine the relative actual harm to the parties. (*Id.* at p. 72.)

The record is not entirely clear as to whether the trial court found that MV Realty had met its burden of demonstrating grave or irreparable harm. On the one hand, the court stated that it was "not persuaded that [MV Realty has] shown grave or irreparable harm to warrant denial of the preliminary injunction." On the other hand, the court accepted MV Realty's contention that if the preliminary injunction issued, it would "essentially [be] force[d] . . . to cease business in California and require[d] . . . to terminate *thousands* of [m]emoranda, which it ha[d] already provided consumers consideration for." (Fn. omitted.) The court also accepted MV Realty's contention that it would be put "'in a state of financial disarray.'" (Fn. omitted.) Even assuming for the purposes of this analysis that the court erred in finding that MV Realty had not demonstrated that it would suffer grave or irreparable harm if the injunction issued, MV Realty was not prejudiced by the presumed error because the

15

court nonetheless balanced the relative harm to the parties, a discretionary analysis which we consider below.

   3.   Balance of Harm

   We next consider MV Realty's contention that the trial court erred because "the balancing of the relative harm clearly tipped in favor of denying the preliminary injunction."  As the Supreme Court has explained, "At this stage of the analysis, no hard and fast rule dictates which consideration must be accorded greater weight by the trial court.  For example, if it appears fairly clear that the plaintiff will prevail on the merits, a trial court might legitimately decide that an injunction should issue even though the plaintiff is unable to prevail in a balancing of the probable harms."  (*IT Corp.*, *supra*, 35 Cal.3d at pp. 72–73.)  The goal is to minimize the harm that would be caused by an erroneous interim decision.  (*Id*. at p. 73.)

   The trial court found there would be imminent, irreparable harm to homeowners bound by the agreement if the preliminary injunction did not issue because each homeowner would be bound by terms they never would have knowingly accepted.  Moreover, to achieve marketable title, the recorded memorandum must be subordinated, satisfied, or terminated.  Not one of the approximately 70 homeowners who submitted declarations in this case stated that this was something they willingly bargained for in exchange for the .27 percent of their home value they received as consideration.  And, the agreement does not *require* MV Realty to subordinate its lien, only to consider a request for subordination in good faith.  Even when MV Realty offers to subordinate its lien, as the evidence shows it has done in the

16

past, many lenders will not accept the subordination. A homeowner who wishes to refinance or take a home equity loan, therefore, must pay the Early Termination Fee to clear the title.

The trial court did not abuse its discretion when it determined that the balance of harm favored the People and issued the requested injunction. The court properly understood its discretion as a legal matter, and the choice it made was within the permissible range of options before it. (*Uber*, *supra*, 56 Cal.App.5th at p. 308, citing *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957.)

### 4. MV Realty's Other Arguments

MV Realty contends the preliminary injunction is impermissibly overbroad because it "effectuates a permanent forfeiture of MV Realty's entire California portfolio of [the agreements]" and thus resolves the ultimate issue in the lawsuit prematurely. We reject MV Realty's argument. "[A] judicial remedy must be tailored to the harm at issue." (*Butt v. State of California* (1992) 4 Cal.4th 668, 695.) At the hearing on the motion for preliminary injunction, MV Realty proposed that instead of ordering it to terminate all memoranda, the trial court could order it to: provide notice to every customer, title company, and lender that the memoranda is not a lien; subordinate when requested to do so by a lender; and terminate a memorandum if a lender rejects the subordination. None of these suggestions was a deviation from what MV Realty represented was its contemporaneous practice to assist homeowners with refinancing. The People submitted evidence that homeowners nevertheless continued to suffer harm as they struggled to get in touch with

17

the company to request subordination and complete the lengthy process of clearing title.  It was not an abuse of discretion for the court to find MV Realty's proposed alternatives insufficient to accomplish its objective of releasing homeowners from liens that obstructed their access to the equity in their home.

MV Realty next contends that it was deprived of due process when the trial court rejected its request for live testimony at the hearing on the preliminary injunction motion.  The Rules of Court require that evidence presented at a motion hearing be by declaration—without cross-examination—"unless the court orders otherwise *for good cause shown*."  (Cal. Rules of Court, rule 3.1306(a), italics added.)  The court was not required to allow live testimony at the hearing and was within its discretion to deny the request after MV Realty failed to demonstrate good cause.  (See *Rosenthal v. Great Western Financial Securities Corp.* (1996) 14 Cal.4th 394, 413–414; *City of Crescent City v. Reddy* (2017) 9 Cal.App.5th 458, 464–465.)  We thus reject MV Realty's contention.

Likewise, the trial court did not "effectuate an improper retroactive application" of Civil Code section 1670.12, subdivisions (b) and (c), when it issued its preliminary injunction.  The court determined the People were likely to prevail on the merits of its UCL and FAL claims; it did not apply Civil Code section 1670.12.

## V.  DISPOSITION

The trial court's order granting the preliminary injunction is affirmed.  The supersedeas stay is lifted.  The People are awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.


We concur:



HOFFSTADT, P. J.



MOOR, J.