[No. B080453. Second Dist., Div. Seven. Aug. 16, 1994.]

MARK SAUNDERS et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CALIFORNIA REPORTING ALLIANCE et al., Real Parties in Interest.

## COUNSEL

Brobeck, Phleger & Harrison, James L. Miller, Thomas M. Peterson, Meredith N. Landy and Gregory D. Suski for Petitioners.

No appearance for Respondent.

Dan Stormer, Carol A. Klauschie, Dori E. Miles, Sheppard, Mullin, Richter & Hampton, Don T. Hibner, Jr., Dani Jo Merryman and Samantha M. Phillips for Real Parties in Interest.

## Opinion

JOHNSON, J.—Plaintiffs (petitioners) filed suit against a group of certified shorthand reporters and two insurance companies for unfair business practices, interference with contract and interference with prospective economic advantage. The trial court sustained the demurrers of defendants (real parties in interest) to all causes of action without leave to amend. We issued an alternative writ of mandate to review this ruling. For the reasons explained below, we have determined the trial court erred in sustaining the demurrers.

### Facts and Proceedings Below

This cause and its companion, *Wilcox* v. *Superior Court, ante,* 809 [33 Cal.Rptr.2d 446], arise out of the practice of "direct contracting" under which a certified shorthand reporter or association of reporters contract with a major consumer of reporter services, such as an insurance company, for the exclusive right to report depositions taken by attorneys representing that consumer.

Plaintiffs are certified shorthand reporters who have brought suit against defendants, also certified shorthand reporters, alleging "direct contracting" as practiced by defendants constitutes an unfair business practice, intentional interference with plaintiffs' prospective economic advantages and interference with existing contracts. Also named as defendants are two insurance companies which contracted with the defendant reporters.[1] The alleged unlawful practices are described in our discussion below.

The trial court sustained demurrers to all causes of action without leave to amend. For a variety of procedural reasons we determined plaintiffs have no adequate remedy in the ordinary course of law and, therefore, we issued an alternative writ of mandate to review the trial court's ruling.

### Discussion

I. *Plaintiffs' Complaint States a Cause of Action for Unfair Business Practices Under Section 17200 of the Business and Professions Code.*

The sufficiency of a complaint is, of course, a question of law which we review de novo. In doing so, we accept as true all properly pleaded allegations and do not go beyond the four corners of the complaint except as

---

[1] The reporter defendants filed a cross-complaint against plaintiffs and others who had contributed financially to, or otherwise supported, the maintenance of this litigation. We address this cross-complaint in *Wilcox* v. *Superior Court, supra, ante,* 809 filed concurrently.

to matters which are judicially noticeable. (*Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 213-214 [197 Cal.Rptr. 783, 673 P.2d 660]; *Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

■ Plaintiffs' principal claim is that "direct contracting," as practiced by defendants, constitutes unfair competition under Business and Professions Code section 17200.[2]

"Direct contracting," as the parties use that term, is a form of exclusive dealing arrangement whereby the seller sells a product or service to the buyer on condition the buyer purchase the product or service only from the seller. (See § 16727.) Here, plaintiffs' complaint alleges the reporter defendants, competitors of plaintiffs, have formed an organization called the California Reporting Alliance (CRA). As members of CRA the reporter defendants have agreed they will provide reporting services to the insurance company defendants pursuant to rates, terms and conditions set by CRA. The defendant insurance companies have entered into contracts with CRA which provide all attorneys representing their policyholders must use CRA members for reporting services and the companies will not pay for reporting services unless those services were obtained from a CRA reporter. CRA will bill the insurance companies directly, at agreed upon rates, for all reporting services furnished to attorneys representing policyholders.

Plaintiffs further allege that pursuant to the agreements between CRA and the insurance companies the companies instructed the attorneys representing their policyholders to sever all existing contracts with reporters and to use exclusively the services of CRA reporters. These instructions were enforced by means of threats by the companies that services performed by non-CRA reporters would not be paid for.

Plaintiffs do not contend direct contracting is illegal per se. (Cf. *Redding* v. *St. Francis Medical Center* (1989) 208 Cal.App.3d 98, 107 [255 Cal.Rptr. 806].) Indeed, some of the plaintiffs admit that prior to the CRA-insurer contract they themselves had contracts with law firms to provide reporter services. Rather, it is plaintiffs' contention direct contracting as practiced by defendants constitutes an unfair business practice under section 17200.

Before turning to plaintiffs' specific allegations under section 17200, it is worth noting the breadth of the statute with which we are dealing.

■ Section 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice . . . ." The "unlawful" practices prohibited by section 17200 are any practices forbidden by law, be it civil or

---

[2]Future statutory references are to the Business and Professions Code unless otherwise noted.

criminal, federal, state, or municipal, statutory, regulatory, or court-made. (*People* v. *McKale* (1979) 25 Cal.3d 626, 632 [159 Cal.Rptr. 811, 602 P.2d 731].) It is not necessary that the predicate law provide for private civil enforcement. (*Samura* v. *Kaiser Foundation Health Plan, Inc.* (1993) 17 Cal.App.4th 1284, 1299 [22 Cal.Rptr.2d 20].) As our Supreme Court put it, section 17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under section 17200 et seq. (*Farmers Ins. Exchange* v. *Superior Court* (1992) 2 Cal.4th 377, 383 [6 Cal.Rptr.2d 487, 826 P.2d 730].) "Unfair" simply means any practice whose harm to the victim outweighs its benefits. (*Motors, Inc.* v. *Times Mirror Co.* (1980) 102 Cal.App.3d 735, 740 [162 Cal.Rptr. 543].) "Fraudulent," as used in the statute, does not refer to the common law tort of fraud but only requires a showing members of the public " 'are likely to be deceived.' " (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1267 [10 Cal.Rptr.2d 538, 833 P.2d 545].)

A plaintiff suing under section 17200 does not have to prove he or she was directly harmed by the defendant's business practices. An action may be brought by any "person, corporation or association or by any person acting for the interests of itself, its members or the general public." (§ 17204.)

With these principles in mind, we review the allegations of the plaintiffs' second amended complaint.

Plaintiffs allege the contracts between defendant reporters and insurers provide, inter alia, all attorneys representing the insurers' policyholders must use CRA members exclusively for reporting services. Furthermore, "CRA and the reporter defendants will offer training to the insurance carrier defendants and their employees in order to facilitate and aid the insurance carrier defendants in fulfilling their duty of defense to policyholders." In addition, "CRA and the reporter defendants will review and comment upon the substance of sworn testimony taken down by the reporter defendants and the performance of the lawyers at the proceeding and will assist insurance companies to evaluate the need for replacement counsel."

These contract provisions, plaintiffs allege, are unlawful and unfair because they compromise the impartiality of the CRA reporters, provide the CRA reporters with a financial interest in the outcome of the litigation and constitute an unreasonable restraint of trade.[3]

Section 8025 provides the State may suspend or revoke a shorthand reporter's certification for unprofessional conduct. " 'Unprofessional conduct' includes, but is not limited to, acts contrary to professional standards

---

[3]The plaintiffs also allege unlawful interference with contractual relationships, interference with prospective economic advantage and conspiracy. Because these torts are also alleged as

concerning . . . impartiality . . . ." (*Ibid.*) Under the CRA contract, the reporter at a deposition may be wearing as many as five hats. He or she may be not only reporting the deposition but also may be the trainer of the attorney taking the deposition and the insurance company employees preparing for the deposition. In addition to reporting and transcribing the deposition, the reporter will also be providing a review and commentary on the substance of the sworn testimony, critiquing the performance of the attorney taking the deposition and evaluating for the insurer the need to replace this attorney.

Whether such conduct on the part of a certified shorthand reporter is contrary to professional standards concerning impartiality will have to await expert testimony at trial. ▮ A demurrer tests only the legal sufficiency of the allegations. It does not test their truth, the plaintiffs' ability to prove them or the possible difficulty in making such proof. (*Committee on Children's Television, Inc.* v. *General Foods Corp., supra,* 35 Cal.3d at pp. 213-214.) ▮ We cannot say, as a matter of law, a reporter who at the same time acts as trainer, commentator, critiquer and evaluator for one party as to the deposition he or she is reporting has not violated professional standards of impartiality.

Plaintiffs further allege that in order to provide a reduced rate to the insurance companies for reporting and transcribing the deposition, CRA members charge the other parties higher than the normal market rate for copies of the deposition and that the public and the other litigants are not informed of this practice.

The practice of providing a discount to the party who notices the deposition while increasing the cost to the parties requesting copies of the deposition appears, on its face, to violate the mandate of impartiality in section 8025. In *Motors, Inc.* v. *Times Mirror Co., supra,* plaintiff, a wholesale distributor, alleged defendant was engaged in an unfair business practice because its advertising rate for wholesalers was 30 percent higher than its rate for retailers. Plaintiff attempted to place an ad informing retail customers where they could purchase the goods it distributed and was charged the higher wholesaler rate. The trial court sustained a demurrer to the complaint without leave to amend. The Court of Appeal reversed, stating: "That the practice complained of by plaintiff . . . is unfair, seems obvious. In effect the Times' rate structure forces plaintiff and others similarly situated to pay 30 percent more for an advertisement informing the public where certain products can be purchased at retail, than defendant charges to competing retail establishments that sell the same product." (102 Cal.App.3d at p. 741.)

separate causes of action elsewhere in the complaint, we will deal with them separately below.

In the present case, the unfairness is even more obvious than in *Motors*. There, at least, plaintiff could have taken its advertising business to another newspaper. The nondeposing parties, however, are bound by their adversary's choice of reporter and cannot obtain a copy of the deposition from any other source.

In another analogous case, *Southwest Marine, Inc.* v. *Triple A Machine Shop, Inc.* (N.D.Cal. 1989) 720 F.Supp 805, plaintiff, an unsuccessful bidder for a Navy contract, sued the successful bidder alleging defendant had been able to underbid plaintiff because defendant achieved savings through improper disposal of hazardous wastes. In denying defendant's motion to dismiss for failure to state a claim on which relief could be granted, the court stated: "In light of the expansive construction given statutory unfair competition by the California courts, and because plaintiff has sufficiently alleged injury due to defendants' conduct as described above, the Court concludes that plaintiff has standing to sue and has stated a claim under Cal. Business and Professions Code Section 17200 *et seq.*" (*Id.* at p. 808.)[4]

Furthermore, if one party is being charged higher costs for a deposition without being informed it is paying for its adversary's discount defendants may be violating section 17405 which prohibits the secret payment or allowance of unearned discounts. (See *Diesel Electric Sales & Service, Inc.* v. *Marco Marine San Diego, Inc.* (1993) 16 Cal.App.4th 202, 211-212 [20 Cal.Rptr. 62].)

Whether, as defendants contend, the CRA contracts and practices advance efforts to contain litigation costs, foster competition, and are legal and fair is not a matter that can be decided at the demurrer stage. (*Motors, Inc.* v. *Times Mirror Co., supra*, 102 Cal.App.3d at p. 740.) Instead, as Justice Kaus, observed, ". . . if [the] pleading states a prima facie case of harm, having its genesis in an apparently unfair business practice, the defendant should be made to present its side of the story." (*Ibid.*)

■ The trial court was correct, however, in ruling the allegations regarding restraint of trade, misrepresentation of defendant reporters' experience and the CRA reporters' financial interest in the litigation failed to support a

---

[4]Although plaintiffs would have standing to assert injuries to the public (§ 17204), plaintiffs' complaint alleges the practice of charging higher than market rate prices for deposition copies not only injures members of the public but directly injures plaintiffs for the same reason alleged in *Southwest Marine*; that is, defendants use this unfair practice as a means of undercutting plaintiffs' deposition prices and taking contracts away from them which they would otherwise be awarded.

cause of action under section 17200.[5] The complaint alleges the actions of defendants "restrain trade in the provision of court reporting services in that the agreements prohibit free competition by non-CRA member firms for work 'assigned' to counsel for CRA-affiliated insurance carriers." Such allegations are too vague and conclusionary to support a claim for restraint of trade. (*Cellular Plus, Inc.* v. *Superior Court* (1993) 14 Cal.App.4th 1224, 1236 [18 Cal.Rptr.2d 308]; *Motors Inc.* v. *Times Mirror Co., supra,* 102 Cal.App.3d at pp. 741-742.) The allegations regarding misrepresentation of the experience and ability of CRA members are also too vague and uncertain to state a cause of action. As to financial interest, Code of Civil Procedure section 2025, subdivision (k) prohibits a reporter from being "financially interested in the *action*." (Italics added.) There are no allegations payment of a CRA reporter's fee or the amount of the fee is related to the success of the deposition from the insurer's standpoint or to the ultimate outcome of the action in which the deposition was taken. Proof of the financial arrangements between the reporter and insurer defendants may be relevant to the issue of the reporters' impartiality but these arrangements, as alleged in the complaint, do not constitute a violation of Code of Civil Procedure section 2025, subdivision (k).

II. *Plaintiffs Hill and Bannon Stated a Cause of Action for Intentional Interference with Contract.*

■    Two of the plaintiffs, Hill and Bannon, claim defendants intentionally interfered with their contract to provide reporter services to the law firm of Rushfeldt, Shelley & Drake (Rushfeldt), not a defendant in this action. Defendants contend the pleading is insufficient because it does not allege any definite obligation on the part of Rushfeldt to actually use plaintiffs' reporting services, therefore the alleged contract was unenforceable. In addition, the insurer defendants argue because they were Rushfeldt's clients and ultimately paid the bills for the reporting services they were parties to Rushfeldt's contract with plaintiffs Hill and Bannon and a cause of action for interference with contract does not lie against a party to the contract. (*Applied Equipment Corp.* v. *Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 514 [28 Cal.Rptr.2d 475, 869 P.2d 454].)

We find no merit to defendants' first contention. The complaint alleges plaintiffs were to perform certain acts and "[Rushfeldt] agreed, in turn, to utilize plaintiffs for reporting of professional liability claims. This contract

---

[5]There is no basis for granting plaintiffs leave to amend as to these allegations. At the hearing on the demurrers, plaintiffs advised the trial court if it was inclined to sustain the demurrers it should do so without leave to amend "because we intend to stand on our complaint as it stands."

was to continue as long as both parties were satisfied with the other's performance." This language adequately pleads Rushfeldt's duty to use plaintiffs' reporting services. In any event, case law recognizes a tort action for interference with a contract even if the contract is unenforceable. (*Pacific Gas & Electric Co.* v. *Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1127-1128 [270 Cal.Rptr. 1, 791 P.2d 587].)

The insurer defendants have cited no authority nor have we found any to support the proposition that merely because they were Rushfeldt's clients or because they ultimately paid their policyholders' deposition costs this made them parties to the contract between the law firm and the deposition reporter.

For these reasons, we conclude the trial court improperly sustained the demurrer to Hill's and Bannon's cause of action against all defendants for intentional interference with contract.

III. *Plaintiffs Adequately Pled a Cause of Action for Intentional Interference With Prospective Economic Advantage.*

Plaintiffs' complaint includes a claim against all defendants for intentional interference with prospective economic advantage. The reporter defendants demurred on the ground of competitive privilege. The insurer defendants demurred on the ground they are the clients and pay for the depositions, therefore they have the right to determine which reporting service their attorneys will use.

We find no merit to the reporter defendants' demurrer based on competitive privilege. The mere fact the complaint alleges the defendant reporters are competitors of the plaintiffs does not give rise to an absolute privilege on the part of defendants to interfere with plaintiffs' prospective economic advantage. If it did, no cause of action could ever be stated by one competitor against another. This is clearly not the law. (See, e.g., *McCord Co.* v. *Plotnick* (1951) 108 Cal.App.2d 392, 394 [239 P.2d 32].) Rather, as we explained in *Rickel* v. *Schwinn Bicycle Co.* (1983) 144 Cal.App.3d 648, 657-658 [192 Cal.Rptr. 732], justification based on privilege is an affirmative defense. Furthermore, the competition privilege is defeated if the defendant engages in unlawful or illegitimate means. (See *A-Mark Coin Co.* v. *General Mills, Inc.* (1983) 148 Cal.App.3d 312, 323-324 [195 Cal.Rptr. 859]; Rest.2d Torts (1979) § 768, subd. (1).) Here, plaintiffs pled the reporter defendants were interfering with plaintiffs' prospective economic advantage by unlawful and illegitimate means. (See discussion in pt. I, *ante*.)

The insurers argue that as clients they have the right to choose the reporter services *their attorneys* will use in conducting depositions and, having put

their attorneys on notice to use only CRA reporters, they are perfectly within their rights to refuse to pay for depositions conducted by non-CRA reporters. While defendants may be able to show at trial their interference with plaintiffs' prospective business advantage is justified, justification is an affirmative defense, not a ground for sustaining a demurrer to the complaint.

In *Lowell* v. *Mothers' Cake & Cookie Co.* (1978) 79 Cal.App.3d 13 [144 Cal.Rptr. 664, 6 A.L.R.4th 184] plaintiff alleged it had owned a trucking firm that derived 40 percent of its business from an oral contract with defendant. Plaintiff received an offer to purchase its business for $200,000 conditioned on the firm's continued business with defendant. Defendant informed the prospective purchaser the contract would be terminated if the firm was sold. The deal fell through and the firm was eventually purchased by defendant for $17,000. Plaintiff sued alleging intentional interference with prospective economic advantage. According to the plaintiff's allegations, defendant intentionally interfered with the firm's sale to prospective purchasers in order to depress the purchase price and purchase the firm itself at a price substantially below its market value. Defendant claimed it was free to terminate its business relationship with plaintiff and was at liberty to inform prospective purchasers it did not intend to utilize the firm's services if the firm changed hands. The trial court sustained defendant's demurrer to the complaint but the Court of Appeal reversed. The appellate court held it was not a complete defense to the action that defendant's means of interference were entirely lawful. ■ "[I]ntentional interference with prospective economic advantage constitutes actionable wrong *if* it results in damages to the plaintiff, *and* the defendant's conduct is not excused by a legally recognized privilege or justification." (*Id.* at p. 20, italics by the court.) The court went on to state, " '*Whether an intentional interference by a third party is justifiable depends upon* a balancing of the importance, social and private, of the objective advanced by the interference against the importance of the interest interfered with, *considering all the circumstances* including the nature of the actor's conduct and the relationship between the parties.' [Citations.]" (*Id.* at pp. 20-21, italics by the court.)

■ The case before us is similar to *Thompson* v. *Allstate Insurance Company* (5th Cir. 1973) 476 F.2d 746. In *Thompson* the plaintiff alleged Allstate, through its agents, had intentionally interfered with plaintiff's prospective business relations by informing plaintiff's customers Allstate would not make any estimates of repair on damaged automobiles taken to plaintiff's garage nor would it honor any claims against it if plaintiff performed the repair work. The district court dismissed plaintiff's complaint on the ground it failed to state a claim on which relief could be granted. On appeal Allstate argued this ruling was proper because its actions were

privileged. Like the insurer defendants in the present case, "Allstate asserts that it has an economic interest in insuring that claims against its policyholders are disposed of expeditiously and at the minimum reasonable cost and that its actions were in furtherance of that interest." (*Id.* at p. 750.) The Fifth Circuit rejected this argument as a basis for dismissing the complaint at the pleading stage. "Without deciding the sufficiency of Allstate's alleged privilege, we note that whether Allstate had an economic interest in the subject matter and, assuming such interest, whether its conduct was actually motivated by that economic interest, are questions of fact. In his complaint, the plaintiff alleged that Allstate's actions were not motivated by an economic interest but by a desire to injure the plaintiff's business. Thus, dismissal of the complaint was improper since there was a contested issue of a material fact." (*Ibid.*)

In *Thompson*, defendant exercised economic pressure on its policyholders not to deal with plaintiff. In the present case, the insurers are allegedly exercising economic pressure on their attorneys not to deal with plaintiffs. The Restatement Second of Torts comments, "The question whether [economic] pressure is proper is answered in the light of the circumstances in which it is exerted, the object sought to be accomplished by the actor, the degree of coercion involved, the extent of the harm that it threatens, the effect upon neutral parties drawn into the situation, the effects upon competition, and the general reasonableness and appropriateness of this pressure as a means of accomplishing the actor's objective." (Rest.2d Torts, *supra*, § 767, p. 31.) These questions cannot be determined at the demurrer stage and, consequently, the trial court erred in holding plaintiffs failed to state a cause of action against the insurer defendants for intentional interference with prospective economic advantage.

IV. *Plaintiffs Sufficiently Alleged Defendants' Liability Under Theories of Conspiracy and Aiding and Abetting.*

Plaintiffs allege all defendants conspired to engage in unfair business practices, intentionally interfere with contract and intentionally interfere with prospective economic advantage and, in addition, the reporter and insurer defendants aided and abetted each other in the commission of these torts.

Although conspiracy to commit a tort is not a separate cause of action from the tort itself, alleging a conspiracy fastens liability on those who agree to the plan to commit the wrong as well as those who actually carry it out. (*Applied Equipment Corp.* v. *Litton Saudi Arabia Ltd., supra,* 7 Cal.4th at pp. 510-511.) The elements of a civil conspiracy are the formation

and operation of the conspiracy and damage resulting to plaintiff from an act done in furtherance of the common design. (*Id.* at p. 511.) Liability may also be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person. (Rest.2d Torts, *supra*, § 876, subds. (b), (c); and see *Central Bank of Denver* v. *First Interstate Bank of Denver* (1994) 511 U.S. __ [128 L.Ed.2d 119, 134-135, 114 S.Ct. 1439, 1450]; *Coffman* v. *Kennedy* (1977) 74 Cal.App.3d 28, 31-32 [141 Cal.Rptr. 267].)

█ Defendants do not contend the complaint lacks the necessary allegations for civil conspiracy or aiding and abetting. Rather, they repeat the arguments discussed above: they committed no unfair business practice, a principal cannot conspire with an agent to interfere with a contract and their interference with plaintiffs' prospective economic advantages, if any, was justified. In parts I-III above we rejected these arguments as supporting demurrers to plaintiffs' complaint and we will not repeat that discussion here. It follows from what we said above the plaintiffs are entitled to proceed on theories of conspiracy and aiding and abetting.

### DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to vacate its order sustaining defendants' demurrers to plaintiffs' second amended complaint and to issue a new order overruling the demurrers.

Lillie, P. J., and Woods (Fred), J., concurred.