128 Cal.Rptr.2d 389 (2002)
104 Cal.App.4th 845
Margaret Rose GREGORY, Plaintiff and Appellant,
v.
ALBERTSON'S, INC., et al., Defendants and Respondents.
Nos. A097031, A097620.
Court of Appeal, First District, Division One.
December 20, 2002.
Review Denied March 19, 2003.
*390 Cary L. Dictor, Esq., Alameda, for Plaintiff and Appellant.
Coblentz, Patch, Duffy & Bass, LLP, William H. Orrick III, Esq., San Francisco, for Defendant and Respondent Albertson's, Inc.
Stein, Smith, Rudser & Cohen, LLP, David A. Stein, Esq., Harold P. (Peter) Smith, Esq., Oakland, Jessica R. Stavnezer, Esq., for Defendant and Respondent Ires (California), Inc.
SWAGER, J.
Margaret Rose Gregory appeals an order and a judgment on the pleadings dismissing her first amended complaint against Albertson's Inc. and Ires (California), Inc. (hereafter Albertson's and Ires) to enjoin an unfair business practice. We affirm.

FACTUAL BACKGROUND
Appellant filed her first amended complaint after the trial court sustained a demurrer filed by Albertson's to the original complaint. As amended, the complaint alleges appellant is "an individual citizen and resident of the city of Alameda, County of Alameda, State of California." Ires is the owner of the Bridgeside Shopping Center in Alameda, California. In 1972, Ires leased to Albertson's predecessor "the larger one of the two major anchor stores" in the shopping center, which was "specially fitted for the sale of grocery and sundry items by a larger retailer of such items." Albertson's now holds the leasehold interest under a lease that "currently runs through the year 2042, including extension options."
In February 1997, Albertson's opened a large retail facility at Fruitvale Station Shopping Center in Oakland. The first amended complaint alleges that Albertson's "determined" that this facility "should service an area including the same area formerly serviced by [its store] at Bridgeside Shopping Center" and therefore "determined to indefinitely `warehouse,' i.e., hold but make no beneficial use of, the leasehold space it formerly used for its facility at the Bridgeside Shopping Center in Alameda, in order to continue to hold the legal right of possession for such leasehold for the purpose of preventing any competitor from using such space to compete in the retail sale of groceries." Ires has permitted Albertson's to pursue this business strategy of maintaining the leasehold premises "in a permanent state of closure and darkness, vacant and empty, devoid of commercial activity, usefulness, use or purpose, and decaying, deteriorated and blighted, which condition has existed ... from February, 1997 ... [and] threatens to continue unchanged for over 40 years into the future."
The first amended complaint alleges that "[t]he maintenance of said leasehold in a permanent state of closure" is an unfair business practice by which Albertson's and Ires "thwart any effort by competitors *391 ... [of Albertson's] to make any beneficial use of the leasehold premises." The withdrawal of "the largest anchor building in a multiple user small commercial center serving a small community" creates "commercial and residential deterioration and blight, eliminating the economic viability of most of the shopping center space for most users, depressing land values in the vicinity, creating an attractive nuisance, creating visual and unaesthetic decay, reducing and eliminating consumer shopping choices, depriving the local municipality of sales tax revenues, strangling other small retail businesses in the same shopping center and unfairly restraining market competitors and economic competition based on price, service and quality."
Appellant seeks an injunction restraining Albertson's and Ires "from continuing to withhold the said leasehold space from normal and beneficial economic activity ... and enjoining and directing defendants ... actively to market such leasehold for assignment or subletting to business competitors or others, without regard for market competition to defendants Albertson's Inc."
Albertson's filed a demurrer to the first amended complaint on the ground that it failed to allege facts sufficient to state a cause of action under the unfair competition law. The trial court sustained the demurrer by an order filed September 7, 2001, and entered an order dismissing the first amended complaint against Albertson's on November 6, 2001. Ires subsequently filed a motion for judgment on the pleadings that was granted by an order filed December 17, 2001, and a judgment was entered in its favor on January 2, 2002. Appellant filed timely notices of appeal from the order entered November 6, 2001, and the judgment entered January 2, 2002.

DISCUSSION

A. Standard of Review
"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed `if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (Aubry v. Tri-City Hospital Dist. (1992) 2 Cal.4th 962, 966-967, 9 Cal.Rptr.2d 92, 831 P.2d 317; Palm Springs Tennis Club v. Rangel (1999) 73 Cal.App.4th 1, 4-5, 86 Cal.Rptr.2d 73.) The same principles apply to an appeal from a judgment on the pleadings. (Buck v. Standard Oil Co. (1958) 157 Cal. App.2d 230, 235, 321 P.2d 67.)

B. Unfair Competition Law
The unfair competition law (Bus. & Prof.Code, § 17200 et seq.) was "one of the so-called `little FTC Acts' of the 1930's, enacted by many states in the wake of amendments to the Federal Trade Commission Act enlarging the commission's regulatory jurisdiction to include unfair business practices that harmed, not merely the interests of business competitors, but of the general public as well." (Rubin v. Green (1993) 4 Cal.4th 1187, 1200, 17 Cal. *392 Rptr.2d 828, 847 P.2d 1044; Bank of the West v. Superior Court (1992) 2 Cal.4th 1254, 1263-1264, 10 Cal.Rptr.2d 538, 833 P.2d 545.) The definition of unfair competition in section 17200 "demonstrates a clear design to protect consumers as well as competitors by its final clause, permitting inter alia, any member of the public to sue on his own behalf or on behalf of the public generally." (Barquis v. Merchants Collection Assn. (1972) 7 Cal.3d 94, 110, 101 Cal.Rptr. 745, 496 P.2d 817.)
The present action seeks relief under Business and Professions Code section 17203, which authorizes injunctive relief to prevent "unfair competition." This term is broadly defined by section 17200 of the Business and Professions Code to include "any unlawful, unfair or fraudulent business act or practice." In Barquis v. Merchants Collection Assn., supra, 7 Cal.3d 94, 112, 101 Cal.Rptr. 745, 496 P.2d 817, the court observed that the predecessor to section 17200 "was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable `"new schemes which the fertility of man's invention would contrive."' [Citation.]" "[G]iven the creative nature of the scheming mind, the Legislature evidently concluded that a less inclusive standard would not be adequate." (Barquis v. Merchants Collection Assn., supra, at p. 112, 101 Cal.Rptr. 745, 496 P.2d 817.) The coverage of the statute is "`sweeping, embracing "`anything that can properly be called a business practice and that at the same time is forbidden by law.'"' [Citations.] It governs `anticompetitive business practices' as well as injuries to consumers, and has as a major purpose `the preservation of fair business competition.' [Citations.]" (Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (Cel-Tech).) It "`"borrows" violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder.'" (Farmers Ins. Exchange v. Superior Court (1992) 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487, 826 P.2d 730.) Section 17200 does not require that a plaintiff prove that he or she was directly injured by the unfair practice or that the predicate law provides for a private right of action. (Saunders v. Superior Count (1994) 27 Cal. App.4th 832, 839, 33 Cal.Rptr.2d 438.)
In construing the unfair competition law, the courts have drawn upon common law precedents in the fields of business torts (e.g., American Philatelic Soc. v. Claibourne (1935) 3 Cal.2d 689, 698, 46 P.2d 135) as well as judicial interpretation of the closely parallel provisions of the Federal Trade Commission Act. (See People ex rel. Mosk v. National Research Co. of Cal. (1962) 201 Cal.App.2d 765, 770-774, 20 Cal. Rptr. 516.) Because Business and Professions Code section 17200 "is written in the disjunctive, it establishes three varieties of unfair competitionacts or practices [which] are unlawful, or unfair, or fraudulent." (AICCO, Inc. v. Insurance Co. of North America (2001) 90 Cal.App.4th 579, 587, 109 Cal.Rptr.2d 359; State Farm Fire & Casualty Co. v. Superior Court (1996) 45 Cal.App.4th 1093, 1102, 53 Cal.Rptr.2d 229; Roskind v. Morgan Stanley Dean Witter & Co. (2000) 80 Cal.App.4th 345, 351, 95 Cal.Rptr.2d 258.) There are separate lines of authority construing each of these three terms. (Walker v. Countrywide Home Loans, Inc. (2002) 98 Cal. App.4th 1158, 1169-1170, 121 Cal.Rptr.2d 79.) The first amended complaint does not contain any factual allegations of unlawful or fraudulent activity. Consequently our inquiry is confined to an analysis of whether the allegations of the operative pleading *393 are sufficient to support a cause of action based upon an "unfair business act or practice."
The term unfair is not precisely defined in the statute, and the courts have struggled to come up with a workable definition. Two appellate court decisions have attempted to formulate a more precise approach to adjudicating the existence of an "unfair" act or practice within the meaning of the unfair competition law. After reviewing the "open-ended definitions of unfairness" in earlier decisions, the court in Motors, Inc. v. Times Mirror Co. (1980) 102 Cal.App.3d 735, 740, 162 Cal.Rptr. 543 "add[ed] this obvious thought: that the determination of whether a particular business practice is unfair necessarily involves an examination of its impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victima weighing process quite similar to the one enjoined on us by the law of nuisance." (Ibid., see also State Farm Fire & Casualty Co. v. Superior Court, supra, 45 Cal.App.4th 1093, 1103, 53 Cal. Rptr.2d 229.)
In People v. Casa Blanca Convalescent Homes, Inc. (1984) 159 Cal.App.3d 509, 530, 206 Cal.Rptr. 164, the court noted that the United States Supreme Court decision in F.T.C. v. Sperry & Hutchinson Co. (1972) 405 U.S. 233, 244, 92 S.Ct. 898, 905, 31 L.Ed.2d 170, 179, sanctioned guidelines for construing parallel language in the Federal Trade Commission Act that stress the potential relevance of public policy. Among other things, these guidelines call for an inquiry into "`"whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; ..."' [Citation.]" (People v. Casa Blanca Convalescent Homes, Inc., supra, at p. 530, 206 Cal.Rptr. 164.) The Casa Blanca court concluded: "an `unfair' business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." (Ibid.)
Cel-Tech, supra, 20 Cal.4th 163, 83 Cal. Rptr.2d 548, 973 P.2d 527 can be read as a departure from these earlier precedents. The plaintiffs were sellers of cellular telephones who filed suit against a company that possessed a government-protected duopoly in the Los Angeles area in selling cellular services. They claimed that the defendant sold cellular telephones below cost so as to gain subscribers for its profitable cellular service. Reversing a judgment for the defendant, the court remanded the case for retrial on the cause of action for unfair competition.
In reviewing precedents under the unfair competition law, the Cel-Tech court found that the "definitions" of unfair acts or practices offered by People v. Casa Blanca Convalescent Homes, Inc., supra, 159 Cal.App.3d 509, 530, 206 Cal.Rptr. 164, and Motors, Inc. v. Times Mirror Co., supra, 102 Cal.App.3d 735, 740, 162 Cal.Rptr. 543,[1] were "too amorphous and provide too little guidance to courts and businesses. Vague references to `public policy,' for example, provide little real guidance.... These concerns led us to hold that to establish the tort of wrongful discharge in violation of public policy, the public policy triggering the violation must *394 be tethered to a constitutional or statutory provision [citation] or a regulation carrying out statutory policy [citation]." (Cel-Tech, supra, 20 Cal.4th 163, 185, 83 Cal. Rptr.2d 548, 973 P.2d 527.)
Turning for guidance to the jurisprudence under section 5 of the Federal Trade Commission Act (15 U.S.C. § 45(a)), the court noted that the "`"antitrust laws ... were enacted for `the protection of competition, not competitors.'" `[Citation.]" (Cel-Tech, supra, 20 Cal.4th 163, 186, 83 Cal.Rptr.2d 548, 973 P.2d 527.) These principles, the court concluded, "require that any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition. We thus adopt the following test: When a plaintiff who claims to have suffered injury from a direct competitor's `unfair' act or practice invokes section 17200, the word `unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." (Id. at pp. 186-187, 83 Cal. Rptr.2d 548, 973 P.2d 527, fn. omitted.)
The court in a footnote specifically limited the scope of its ruling. (Cel-Tech, supra, 20 Cal.4th 163, 187, fn. 12, 83 Cal. Rptr.2d 548, 973 P.2d 527.) Despite the court's earlier concerns that it found the definitions in Casa Blanca and State Farm Fire & Casualty Co. to be "too amorphous" for practical application, it limited application of its newly announced test to an action by a competitor alleging anticompetitive practices. "This case involves an action by a competitor alleging anticompetitive practices. Our discussion and this test are limited to that context. Nothing we say relates to actions by consumers or by competitors alleging other kinds of violations of the unfair competition law such as `fraudulent' or `unlawful' business practices or `unfair, deceptive, untrue or misleading advertising.'" (Cel-Tech, supra, at p. 187, fn. 12, 83 Cal.Rptr.2d 548, 973 P.2d 527.) The present case therefore does not fall within the procedural context to which the new test applies.
Since the test adopted by the court in Cel-Tech is expressly limited to the context of that case, our inquiry continues to be guided by prior Court of Appeal decisions, which have attempted to formulate a test for an "unfair act or business practice." In People v. Duz-Mor Diagnostic Laboratory, Inc. (1998) 68 Cal.App.4th 654, 80 Cal.Rptr.2d 419,[2] 658, 80 Cal. Rptr.2d 419 the court set forth what appears to be an all inclusive definition of unfair competition: "A business practice constitutes unfair competition if it is forbidden by any law, `be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made' (Saunders v. Superior Court (1994) 27 Cal.App.4th 832, 838-839 [33 Cal.Rptr.2d 438]) or if it is unfair, that is, if it `"`offends an established public policy or ... is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.' ..."` (Podolsky v. First Healthcare Corp. (1996) 50 Cal. App.4th 632, 647 [58 Cal.Rptr.2d 89], citations omitted.)"
Cel-Tech, however, may signal a narrower interpretation of the prohibition of unfair acts or practices in all unfair competition actions and provides reason for caution in relying on the broad language in *395 earlier decisions that the court found to be "too amorphous."[3] Moreover, where a claim of an unfair act or practice is predicated on public policy, we read Cel-Tech to require that the public policy which is a predicate to the action must be "tethered" to specific constitutional, statutory or regulatory provisions.

C. Adequacy of Pleadings
There are no allegations that the business decision of the respondents is unlawful, fraudulent or deceptive. We find that the first amended complaint alleges only one coherent theory of an unfair practice: by keeping off the market the chief retail store in the shopping center, the respondents have put in motion a process of deterioration affecting the entire shopping center that will inevitably produce the kind of blight that Health and Safety Code section 33035 condemns "as injurious and inimical to the public health, safety, and welfare of the people of the communities in which they exist...." The public policy expressed in the redevelopment law thus forms the predicate to her cause of action.
Health and Safety Code section 33035 is found in the Community Redevelopment Law (Health & Saf.Code, § 33000 et seq.), which establishes procedures for the acquisition of property by the power of eminent domain and the expenditure of public funds for redevelopment projects. The Community Redevelopment Law contemplates that a redevelopment project will involve the assembly of small property and "public participation and assistance in the acquisition of land, in planning and in the financing of land assembly, in the work of clearance, and in the making of improvements necessary therefor...." (Health & Saf.Code, § 33037.) It delegates to responsible agencies of local government the authority to make the legislative decisions required to formulate and carry out such a project. (Health & Saf. Code, §§ 33036, 33100 et seq., and 33200 et seq.)
While the policy of Health and Safety Code section 33035 supports the statutory scheme for carrying out a redevelopment project, it does not necessarily follow that it calls for a private remedy affecting a single parcel of property under the unfair competition law. Appellant seeks an extension of the policy that departs from the primary focus of the statute.
Moreover, as respondents point out, appellant asks us to apply the policy against urban blight to circumstances where it would impinge on a separate state policy favoring "freedom of contract by the parties to commercial real property leases." (Civ.Code, § 1995.270, subd. (a)(1); cf. Pay `N Pak Stores, Inc. v. Superior Court (1989) 210 Cal.App.3d 1404, 1409-1410, 258 Cal.Rptr. 816.) The Community Redevelopment Law may be viewed as harmonizing the policy condemning blight with distinct policies favoring the free use of property. The balancing of conflicting policies is a common legislative function. The statutory scheme of the Community Redevelopment Law, however, provides only one remedy for the phenomenon of blight condemned by section 33035public participation in a redevelopment project. We do not think it provides any authority for the courts to balance these policies outside this statutory context by fashioning a private remedy through the *396 use of the unfair competition law to affect a single leasehold in a shopping center.
Although our focus is on whether or not appellant has adequately stated a cause of action for unfair competition, we note that the remedy she seeks would impose a difficult burden on the court. The remedy that appellant seeks goes well beyond the remedy of divestment, authorized in antitrust actions, because it demands discretion in choosing between the option of sale or lease and the negotiation with a suitable tenant of commercial real estate terms calculated to remedy the alleged evil of blight. It is true that the courts possess power to appoint receivers to enforce equitable decrees, but appellant seeks a remedy that would put the court in the complex role of supervising and directing efforts to market commercial property in a manner to remedy the multitude of grievances alleged in the complaint. It would not only cause the court "to assume the roles of real estate broker or property manager" as respondents argue, but also would require the court to make competitive business judgments. Furthermore, by tying her claim to the public policy against blight expressed in section 33035, plaintiff in essence is seeking to convert the unfair competition law into a private remedy to remediate blight that may not require the findings of blight as required by the Health and Safety Code. (Health & Saf. Code §§ 33030, subd. (b), 33031.)
Appellant argues that the unfair competition law contains "broad remedial provisions which authorize the courts to correct violations" (Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy (1992) 4 Cal. App.4th 963, 972 [6 Cal.Rptr.2d 193]) and the demurrer cannot be sustained if she is "`entitled to some relief, notwithstanding that ... [she] may demand relief to which [s]he is not entitled under the facts alleged.. ..' [Citation.]" (White v. State of California (1987) 195 Cal.App.3d 452, 471, 240 Cal.Rptr. 732.) But we think a judicially supervised marketing of the property would, at best, put the court in the untenable position of making or approving commercial decisions without clear guidelines and, at worst, would involve a level of dominion over the property raising constitutional issues.[4]
The first amended complaint does not state a theory of unfair practice based on violation of specific anti-trust statutes or policies of anti-trust legislation. It is true that the complaint alleges that Albertson's acted with a motive to secure an advantage over competitors. For example it alleges that Albertson's retained possession under the lease "for the purpose of preventing any competitor from using such space to compete in the retail sale of groceries" and "to thwart any effort by competitors ... to make any beneficial use of the leasehold premises." But these allegations do not state a conflict with antitrust laws or policies. As noted in Cel-Tech, supra, 20 Cal.4th 163, 186, 83 Cal.Rptr.2d 548, 973 P.2d 527, the focus of the antitrust laws is on injury to competition. To come within the letter or policy of these laws, it must be alleged that respondent's conduct had an adverse effect on competition.
We find only one allegation in the complaint charging injury to competition. The respondents' acts, it is alleged, constitute an unfair business practice by "unfairly restraining market competitors and economic competition based on price, service and quality." However, "[s]uch allegations are too vague and conclusionary to support a claim for restraint of trade." (Saunders v. Superior Court, supra, 27 Cal.App.4th *397 832, 842, 33 Cal.Rptr.2d 438.) Similarly, the allegation that defendants' actions "reduce market choices otherwise available to consumers" does not imply a diminution of competition. The same can be said of every occasion that an enterprise ceases to offer its goods or services by going out of business.
Appellant vigorously argues that unfair business practices present issues of fact that cannot be resolved by demurrer. We do not disagree with the general proposition that claims of unfair competition commonly present fact-intensive issues. In People v. McKale (1979) 25 Cal.3d 626, 635, 159 Cal.Rptr. 811, 602 P.2d 731, the court observed, "`What constitutes "unfair competition" ... under any given set of circumstances is a question of fact....' [Citation.]" The determination of unfair competition often involves a weighing process that requires a full examination of the relevant facts. As stated in Schnall v. Hertz Corp. (2000) 78 Cal.App.4th 1144, 1167, 93 Cal.Rptr.2d 439, "`the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victima weighing process quite similar to the one enjoined on us by the law of nuisance....' [Citations.]"
We have relied, however, on an analysis of the legislative policy of Health and Safety Code section 33035 in rejecting the theory of unfair competition based on remediation of blighted areas. Our conclusion that this theory does not state a claim under the unfair competition law represents a conclusion of law rather than the sort of factual finding that cannot be resolved by demurrer. Appellant was given an opportunity to state an alternative theory under the antitrust laws, which might indeed present a fact-intensive issue, but made no legally cognizable effort to do so. As in Khoury v. Maly's of California (1993) 14 Cal.App.4th 612, 619, 17 Cal. Rptr.2d 708, the demurrer was properly sustained because the complaint "identifies no particular section of the statutory scheme [of antitrust laws] which was violated and fails to describe with any reasonable particularity the facts supporting violation."

DISPOSITION
The judgment is affirmed. Costs on appeal are awarded to respondents.
We concur: STEIN, Acting P.J, and MARGULIES, J.
NOTES
[1] The opinion cited State Farm Fire & Casualty Co. v. Superior Court, supra, 45 Cal.App.4th 1093, 1103-1104, 53 Cal.Rptr.2d 229, which followed the Motors, Inc. decision.
[2] The Supreme Court denied a petition for review on February 24, 1999, less than two months before its decision in Cel-Tech.
[3] In our reading of Cel-Tech, we differ somewhat from the interpretation in Smith v. State Farm Mutual Automobile Ins. Co. (2001) 93 Cal.App.4th 700, 720, footnote 23, 113 Cal. Rptr.2d 399, which expressed the view that Cel-Tech "did not signal a retreat (at least in noncompetitor cases), from [the Supreme Court's] earlier statements in Barquis v. Merchants Collection Assn...."
[4] See United States Constitution, article I, section 10 (impairment of contracts clause), Fifth Amendment (takings clause), and Fourteenth Amendment (due process clause).