340 F.3d 1033
 John LIPPITT, on behalf of the general public, Plaintiff-Appellant,
v.
RAYMOND JAMES FINANCIAL SERVICES, INC.; Merrill Lynch, Pierce, Fenner & Smith, Incorporated; First Union Securities, Inc.; Salomon Smith Barney, Inc.; Painewebber Incorporated; A.G. Edwards & Sons, Inc.; Edward D. Jones & Co., L.P.;
Providian Financial; Prudential Securities, Inc.; E Trade Group Inc.; U.S. Bancorp Piper Jaffray, Inc.; Morgan Stanley Dean Witter & Co., Defendants-Appellees.
 No. 01-17049.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted January 14, 2003 — San Francisco, California.
 Submission Withdrawn May 12, 2003.
 Resubmitted August 18, 2003.
 Filed August 25, 2003.
 As Amended September 5, 2003.
 Second Amendment September 22, 2003.
 
 George S. Trevor and James V. Weixel, Jr., Trevor & Weixel LLP, Corte Madera, California, Scot D. Bernstein, Law Offices of Scot D. Bernstein, Mather Field, California, and Tracy Pride Stoneman, Tracy Pride Stoneman, P.C., Westcliffe, Colorado, for the plaintiff-appellant.
 William F. Alderman, Orrick, Herrington & Sutcliffe, San Francisco, California, for defendant-appellee Salomon Smith Barney, Inc.; James A. Hughes, Sullwold & Hughes, San Francisco, California, for defendants-appellees Raymond James Financial Services, Inc. and U.S. Bancorp Piper Jaffray, Inc.; Gregory P. Lindstrom, Joshua Holian, Latham & Watkins, San Francisco, California, for defendant-appellee Morgan Stanley Dean Witter & Co.
 Appeal from the United States District Court for the Northern District of California; Vaughn R. Walker, District Judge, Presiding. D.C. No. CV-01-00748-VRW.
 Before: Mary M. Schroeder, Chief Judge, Alfred T. Goodwin and Richard R. Clifton, Circuit Judges.
 
 ORDER
 
 1
 The parties' joint motion for corrections to opinion is GRANTED. The opinion filed August 25, 2003, and amended September 5, 2005, slip op. 12979, is further amended as follows:
 
 
 2
 1. Slip op. at 12984, replace the first two words at the top of page "a security" to "an instrument".
 
 
 3
 2. Slip op. at 12989, replace the last sentence of the last paragraph beginning: "Because callable CDs are vulnerable...." with "Accordingly, callable CDs may not be suitable for elderly investors looking for stable, fixed income instruments with short maturity periods."
 
 OPINION
 GOODWIN, Circuit Judge:
 
 4
 John Lippitt originally sued a number of brokerage firms in state court, praying for relief under California's Unfair Competition Law ("UCL") that was unavailable in federal court. He now appeals the district court's denial of his motion to remand the removed case back to state court. For the reasons set forth below, we reverse the decision to retain the case as exclusively within federal jurisdiction.
 
 I. BACKGROUND
 A. Lippitt's Complaint
 
 5
 Lippitt has nominated himself as a private attorney general to bring an action on behalf of the general public to challenge the marketing by national brokerage firms ("Defendants")[1] of an instrument known as a "callable certificate of deposit" or "callable CD." The complaint scrupulously avoided any pretense of complying with Fed.R.Civ.P. 8, which calls for a short and plain statement of the claim. Instead, it expended some 11 pages of prolixity in an effort to describe a cause of action under California's Unfair Competition Law, codified at Cal. Bus. & Prof.Code § 17200 et seq. Defendants removed the case asserting that the district court had original jurisdiction under 28 U.S.C. § 1331 and exclusive jurisdiction under § 27 of the 1934 Securities Exchange Act (the "Exchange Act" or the "Act").
 
 
 6
 In their removal papers, Defendants argued that Lippitt's UCL claim sought to implement and enforce rules and regulations promulgated by the New York Stock Exchange (N.Y.SE) pursuant to the self-regulatory directive of the Exchange Act. Because Lippitt had no private right of action in federal court for the violation of an NYSE rule or regulation, see infra, removal of his complaint to federal court, if not remanded to state court, would result in a quick dismissal of the action as soon as requested by the Defendants.
 
 
 7
 The unchallenged removal of an arguably viable state law action from a court where some form of recovery is theoretically available, to a federal district court where a private remedy is categorically impossible results in the case being dismissed. This state of affairs exists because the Securities Exchange Act, which regulates the securities industry, expressly denies a remedy in an action brought by a private class representative to enforce NYSE rules, the judicial supervision of which resides exclusively in federal agencies and courts. Because the laws of California do provide remedies for the kind of fraud and mendacity alleged by Lippitt's complaint, he contends that the district court has denied him his day in court.
 
 
 8
 Within the same legislative scheme Congress enacted two subsections which, if read literally, create tension between each other. Section 27 of the Act, now codified at 15 U.S.C. § 78aa, provides in relevant part:
 
 
 9
 The district courts of the United States... shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.[2]
 
 
 10
 While we agree that any claim that properly falls within the scope of § 27 is necessarily federal in character, Lippitt asserts that his claim falls outside the scope of § 27, and squarely within § 28, codified at 15 U.S.C. § 78bb, which provides in relevant part:
 
 
 11
 [T]he rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity ... Except as otherwise specifically provided in this chapter, nothing in this chapter shall affect the jurisdiction of the securities commission (or any agency or officer performing like functions) of any State over any security or any person insofar as it does not conflict with the provisions of this chapter or the rules and regulations thereunder....
 
 
 12
 On its face, § 28 preserves both common law and statutory authority over securities matters and thus reflects Congressional recognition of state competence in the securities field. See Murphy v. Gallagher, 761 F.2d 878, 885 (2d Cir.1985) (recognizing that § 28 reflects Congress' cognizance of "the long-established state securities acts and the well-developed common law of fraud"). In contrast, Section 27 "confers exclusive jurisdiction upon the federal courts for suits brought to enforce the Act or rules and regulations promulgated thereunder." Matsushita Elec. Industrial Co. v. Epstein, 516 U.S. 367, 370, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996).
 
 
 13
 As both parties correctly recognize, the Exchange Act does not completely preempt or occupy the field of securities regulation. See id. at 383, 116 S.Ct. 873 ("Congress plainly contemplated the possibility of dual litigation in state and federal courts relating to securities transactions."). Because the Act contains an explicit savings clause at § 28, and an exclusive federal jurisdiction clause at § 27, we arrive at the following question: Does § 27 trump § 28, or vice versa, or can they both be given effect?
 
 
 14
 Both parties agree that the Exchange Act saves existing state laws that provide private remedies to enforce a state's own laws to protect its citizens from conduct that is actionable under state law. Both parties also agree that federal courts have exclusive jurisdiction to enforce the rules authorized by federal law. Disagreement arises from the jurisdictional effect of commencing an action in state court to enforce state law. Here, the complaint alleges in a string of wholly needless epithets, state-proscribed misconduct. The alleged misconduct overlaps with conduct that is likewise proscribed by NYSE rules, the enforcement of which is exclusively delegated to the NYSE and the SEC. Enforcement is the key word here. Lippitt seeks only to enforce state law. He seeks no enforcement of any NYSE rule or regulation.
 
 
 15
 While Lippitt contends that his complaint does not assert any rights under NYSE rules or regulations, and that he is not seeking to enforce those rules, his complaint unnecessarily describes the alleged conduct of the defendants in terms that track almost verbatim the misdeeds proscribed by NYSE rules. This, of course, prompted the defendants to "federalize" the case by removal.
 
 
 16
 The able and experienced district court denied Lippitt's motion to remand his case to state court on the ground that § 27 created exclusive federal jurisdiction over the subject matter of the claim. Lippitt then voluntarily dismissed his case with prejudice, obtaining an appealable final order. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. See Concha v. London, 62 F.3d 1493, 1507 (9th Cir.1995) ("[P]laintiffs may appeal from a voluntary dismissal with prejudice, at least where the plaintiff is not acting pursuant to a settlement agreement intended to terminate the litigation.") (emphasis in original).
 
 
 17
 B. Self-Regulation By the NYSE Under the 1934 Exchange Act
 
 
 18
 The Exchange Act establishes a broad regulatory regime over issuers, markets, and market professionals. Congress intended the Act to deter fraud and manipulative practices in the securities markets, and thus established full disclosure requirements for information material to investment decisions and administrative avenues for compensating defrauded investors.
 
 
 19
 While the Act provides for direct market oversight by the Securities Exchange Commission, the day-to-day trading activities of market professionals, like Defendants, are overseen by "self-regulatory organizations" such as the New York Stock Exchange (NYSE)[3] or the National Association of Securities Dealers (NASD). See 15 U.S.C. § 78c(a)(26); see also Barbara v. New York Stock Exchange, Inc., 99 F.3d 49, 51 (2d Cir.1996) (detailing interplay between SEC and NYSE in regulating securities transactions and compliance with the Exchange Act).
 
 
 20
 As an association of securities dealers, the NYSE has the authority to allow its members to effectuate transactions on its trading floor and the duty to promulgate and enforce rules governing the conduct of its members. See 15 U.S.C. §§ 78b, 78s(g); see also Silver v. New York Stock Exchange, 373 U.S. 341, 353, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963) ("One aspect of the statutorily imposed duty of self-regulation is the obligation to formulate rules governing the conduct of exchange members."). The NYSE requires member firms to supervise and control employee activity related to compliance with securities laws and regulations, see NYSE Rule 342, as well as to adhere to principles of good business practice in the conduct of their affairs, see NYSE Rule 401. When the NYSE suspects that a member has violated federal securities laws or internal exchange rules, it must conduct disciplinary proceedings, see 15 U.S.C. §§ 78f(d), 78s(g)(1), and if necessary impose sanctions subject to review and enforcement by the SEC, see 15 U.S.C. § 78s(d)(2).
 
 C. Callable CDs and NYSE Oversight
 
 21
 After numerous customer complaints, the NYSE initiated disciplinary proceedings in October 2000 against one member firm, Edward D. Jones & Co., L.P., ("Jones & Co.") for its failure to supervise and control adequately the sale of callable CDs by its representatives. See New York Stock Exchange Hearing Panel Decision 00-187, 2000 WL 1915283 (Oct. 31, 2000). The NYSE disciplinary board found that the company's sales representatives provided vague and often misleading explanations on the differences between callable CDs and traditional CDs, thus causing customers to purchase unwittingly an investment that did not suit their financial objectives.
 
 
 22
 Introduced to the marketplace in late 1994, callable CDs resemble traditional CDs in that both are issued and insured by banks, pay interest at a specified rate in regular intervals, and have maturity dates after which the issuing bank returns the full principal to the investor. However, callable CDs differ from their traditional counterparts in that they offer investors a higher rate of return, have much longer maturity periods (up to 15 years), and contain a callable component that allows issuing banks to redeem them from the investor after a specified period (typically 12, 18, or 24 months). Furthermore, investors may sell their callable CDs in a secondary market before maturity without incurring a penalty but will receive only the prevailing market price, rather than the full face amount of the CD.
 
 
 23
 Generally, banks will exercise their option to redeem a callable CD when interest rates fall below the specified fixed rate and will allow the CD to mature when interest rates rise above that rate. Accordingly, callable CDs may not suitable for elderly investors looking for stable, fixed income instruments with short maturity periods.
 
 
 24
 The NYSE disciplinary board found that elderly investors were the primary victims of the misleading and deceptive practices used by the sales representatives at Jones & Co. The board found that representatives lied about the lengthy maturity periods and convinced customers that the investor, instead of the issuing bank, had the option of redeeming the callable CD. See supra. Because these deceptive and misleading practices violated several Exchange Rules, the NYSE issued a $200,000 fine against Jones & Co. and established a detailed set of disclosure and review requirements with which the firm would have to comply for the next five years to continue selling callable CDs.
 
 
 25
 Several months after the disciplinary decision against Jones & Co., the NYSE issued an Information Memorandum that essentially echoed its precautions about misleading investors in the sale of callable CDs.[4] See Information Memo, 01-5, "Long Term Certificates of Deposit — Sales Practices" (March 7, 2001). The text advised member firms to distribute informational materials regarding the characteristics and risks of callable CDs and cautioned its members to provide accurate long-term market values in their customer reports.
 
 II. ANALYSIS
 A. Well-Pleaded Complaint Rule
 
 26
 When reviewing a district court's denial of a motion to remand, "[w]e begin our analysis with a fundamental tenet of federal jurisdiction — the `well-pleaded complaint' rule." Sullivan v. First Affiliated Securities, Inc., 813 F.2d 1368, 1371 (9th Cir.1987). The well-pleaded complaint rule is a "powerful doctrine [that] severely limits the number of cases in which state law `creates the cause of action' that may be initiated in or removed to federal district court ..." Franchise Tax Bd. of California v. Construction Laborers Vacation Trust, 463 U.S. 1, 9-10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Under this doctrine:
 
 
 27
 Whether a case is one arising under the Constitution or a law or treaty of the United States ... must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant might interpose.
 
 
 28
 Taylor v. Anderson, 234 U.S. 74, 75-76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914).
 
 
 29
 Hence, our first task is to determine whether the face of Lippitt's complaint contains any allegations that would render his cause of action one that `arises' under federal law. See Sparta Surgical Corp. v. National Assoc. of Securities Dealers, 159 F.3d 1209, 1211 (9th Cir.1998) (we ordinarily determine the existence of a federal question from the face of plaintiff's complaint).
 
 
 30
 Lippitt contends that his complaint has been misinterpreted by Defendants and by the district court. In particular, Defendants have asserted that the complaint seeks "an outright ban on the sale of instruments known to the brokerage industry as callable certificates of deposits." Answering Brief at 2. The district court appears to have read the complaint that way as well, and that understanding was emphasized in its order denying Lippitt's motion for remand (see pages 10-11 of that order). Lippitt argues that his complaint does not seek any such broad ban. Rather, he says, the complaint deals with the way the instruments in question are marketed. What the complaint seeks, according to Lippitt, is not a ban on the instrument itself or on sale of that kind of instrument, but rather "a ban on false advertising," including "Defendants' use of the monikers `callable certificate of deposit' and `callable CD.'" Reply Brief, at 3. While the complaint is the exact opposite of a model of clarity, it can be read in the way Lippitt asserts. Because Lippitt has disclaimed a broader reach, we need not consider whether a state court action that seeks to ban the sale of a given investment instrument altogether would necessarily be subject to federal jurisdiction.
 
 
 31
 Defendants point out that ¶ 17 of the complaint needlessly quotes in substantial part a statement published in the Wall Street Journal by former SEC Chairman Arthur Levitt condemning several brokerage firms for selling callable CDs to elderly people and calling such conduct "out-and-out misleading," "wrong," and "immoral." Likewise ¶¶ 18, 19, and 20 describe the disciplinary procedures and the resulting sanctions conducted by the NYSE against Jones & Co. and quote entire passages from the disciplinary decision. The complaint uses these passages as "an example of the deceptive practices utilized by defendants in the marketing of callable CDs" and that "defendants in this case engaged in deceptive practices similar or identical to those employed by [Jones & Co.]."
 
 
 32
 While this kind of garrulity in pleading is flagrantly inconsistent with Rule 8, and may shock environmentalists keen on saving trees, it does not of itself, turn a state law case into a federal case. It is a "long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction," Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). It should be obvious, then, that mere references by way of example to statements made by the chairman of a federal agency or from a disciplinary action issued by a registered exchange are not enough to confer federal question jurisdiction. See also Rains v. Criterion Systems Inc., 80 F.3d 339, 344 (9th Cir.1996) (in wrongful termination action, direct and indirect references to Title VII were not sufficient to establish federal jurisdiction). Lippitt does not allege, nor can he, that statements by Former Chairman Levitt or passages from the NYSE's disciplinary decision create a liability that is enforceable by a private plaintiff upon all brokerage firms. The appropriate punishment for bad pleading is the striking of surplusage, not removal to federal court where no remedy exists.
 
 B. Artful Pleading Doctrine
 
 33
 Although the face of Lippitt's complaint does not present a claim arising under federal law to warrant subject matter jurisdiction, our inquiry does not end there. "The artful pleading doctrine is a corollary to the well-pleaded complaint rule, and provides that `[a]lthough the plaintiff is master of his own pleadings, he may not avoid federal jurisdiction by omitting from the complaint allegations of federal law that are essential to the establishment of his claim.'" Hansen v. Blue Cross of California, 891 F.2d 1384, 1389 (9th Cir.1989) (quoting Paige v. Henry J. Kaiser Co., 826 F.2d 857, 860 (9th Cir. 1987)).
 
 
 34
 Under the artful pleading doctrine, "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." Franchise Tax Board, 463 U.S. at 22, 103 S.Ct. 2841; see also Sparta, 159 F.3d at 1212 ("A plaintiff may not avoid federal jurisdiction by omitting from the complaint federal law essential to his or her claim or by casting in state terms a claim that can be made only under federal law."). The artful pleading doctrine allows courts to "delve beyond the face of the state court complaint and find federal question jurisdiction" by "recharacteriz[ing] a plaintiff's state-law claim as a federal claim." Precision Pay Phones v. Qwest Communications Corp., 210 F.Supp.2d 1106, 1112-13 (N.D.Cal.2002) (citing Hunter v. United Van Lines, 746 F.2d 635, 640 (9th Cir.1985)).
 
 
 35
 Courts should "invoke the doctrine `only in limited circumstances as it raises difficult issues of state and federal relationships and often yields unsatisfactory results.'" Sullivan, 813 F.2d at 1373 (quoting Salveson v. Western States Bankcard, 731 F.2d 1423, 1427 (9th Cir.1984)). While the artful pleading doctrine is a useful procedural sieve to detect traces of federal subject matter jurisdiction in a particular case, it also has substantive implications on the scope of federal jurisdiction and efficiency. See generally Arthur R. Miller, Artful Pleading: A Doctrine in Search of Definition, 76 Tex. L.Rev. 1781 (1988) (discussing the history of artful pleading doctrine and the implications of doctrinal expansion on federal jurisdiction).
 
 
 36
 Mindful that the district court was treading in a doctrinal minefield, we turn to the same question: whether Lippitt has artfully phrased a federal claim by dressing it in state law attire. Since its first articulation in Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 673, 70 S.Ct. 876, 94 L.Ed. 1194 (1950), courts have used the artful pleading doctrine in: (1) complete preemption cases, see Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 64-65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) and (2) substantial federal question cases, see Franchise Tax Bd., 463 U.S. at 27-28, 103 S.Ct. 2841.[5] Subsumed within this second category are those cases where the claim is necessarily federal in character, see Brennan v. Southwest Airlines Co., 134 F.3d 1405, 1409 (9th Cir.1998), or where the right to relief depends on the resolution of a substantial, disputed federal question, see Merrell Dow, 478 U.S. at 814, 106 S.Ct. 3229.
 
 1. Complete Preemption
 
 37
 In a recent case against a national bank by plaintiffs attempting to plead only state law causes of action for usury, the Supreme Court clarified when removal was proper under the complete preemption doctrine:
 
 
 38
 In the two categories of cases where this Court has found complete preemption — certain causes of action under LMRA and ERISA — the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action.
 
 
 39
 Beneficial Nat. Bank v. Anderson, ___ U.S. ___, ___, 123 S.Ct. 2058, 2063, 156 L.Ed.2d 1 (2003) (emphasis added; citations and footnotes omitted). In the case before us, the "dispositive" question is whether the Exchange Act provides "the exclusive cause of action" for false advertising and deceptive marketing claims against securities firms selling callable CDs? Id. at 2063. If so, then the cause of action necessarily arises under federal law and the case is removable. If not, then the complaint does not arise under federal law and is not removable.
 
 
 40
 We conclude that the Exchange Act does not create exclusive jurisdiction for any and all actions that happen to target false advertising and deceptive sales practices in the sale of callable CDs. To be sure, if Lippitt were asserting a violation of an SRO rule, then, as the parties both agree, this would be a matter of exclusive federal jurisdiction, and therefore removal would be proper. Id.; see also 15 U.S.C. § 78aa (exclusive jurisdiction, under Section 27 of the Exchange Act, is for actions "brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder") (emphasis added). But because Lippitt challenges conduct solely under state law — irrespective of whether it is legal under SRO rules — his claims do not fit under Section 27. In contrast to Beneficial, where there was "no such thing as a state-law claim of usury against a national bank," id. at 2064, here, we cannot say that there is "no such thing" as a state-law claim of false advertising against securities firms. Nothing in the Exchange Act stands for such a sweeping proposition.
 
 2. Substantial Federal Question Cases
 
 41
 In addition to state law claims subject to complete federal preemption, the artful pleading doctrine allows federal courts to retain jurisdiction over state law claims that implicate a substantial federal question. A state law claim falls within this second category when: (1) "a substantial, disputed question of federal law is a necessary element of ... the well-pleaded state claim," Rains, 80 F.3d at 345 (internal citation omitted) (emphasis in original) or the claim is an "inherently federal claim" articulated in state-law terms, Brennan, 134 F.3d at 1409; or (2) "the right to relief depends on the resolution of a substantial, disputed federal question," ARCO, 213 F.3d at 1114 (internal citation omitted). A careful reading of artful pleading cases shows that no specific recipe exists for a court to alchemize a state claim into a federal claim — a court must look at a complex group of factors in any particular case to decide whether a state claim actually "arises" under federal law.
 
 
 42
 Federal law is not a necessary element of Lippitt's UCL claim. To bring a UCL claim, a plaintiff must show either an (1) "unlawful, unfair, or fraudulent business act or practice," or (2) "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof.Code § 17200. "Because... section 17200 is written in the disjunctive, it establishes three varieties of unfair competition-acts or practices which are unlawful, or unfair, or fraudulent." Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Company, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999). "[A] practice is prohibited as `unfair' or `deceptive' even if not `unlawful' or vice versa." Id. Therefore, Lippitt does not have to rely on a violation of the Exchange Act nor an infraction of an NYSE rule or regulation to bring a UCL claim in California state court. He merely has to allege that Defendants' conduct was either unfair or fraudulent. See Saunders v. Superior Court, 27 Cal.App.4th 832, 839, 33 Cal.Rptr.2d 438 (1994) ("Unfair simply means any practice whose harm to the victim outweighs its benefits. Fraudulent... requires a showing [that] members of the public are likely to be deceived.") (internal citations omitted); see also Day v. AT & T Corp., 63 Cal.App.4th 325, 74 Cal.Rptr.2d 55 (1998) (§ 17200 prohibits businesses "from engaging in advertising practices which are potentially misleading to the public").
 
 
 43
 While we express no opinion on whether Lippitt has made sufficiently detailed allegations of deception and fraud to survive in state court a demurrer or motion on the pleadings, his allegations are sufficient (for the limited purposes of this appeal) to sustain the elements of his § 17200 claim without resort to federal law. See Rains, 80 F.3d at 346 (If a plaintiff can support his claim with "alternative and independent theories — one of which is a state law theory and one of which is a federal law theory — federal question jurisdiction does not attach."); see also Roskind v. Morgan Stanley Dean Witter & Co., 165 F.Supp.2d 1059, 1067 (N.D.Cal.2001) (because the unlawful prong of plaintiff's § 17200 claim could be satisfied by either state or federal law, remand was proper).
 
 
 44
 Lippitt here makes no effort to enforce either a provision of the Act or a rule/regulation promulgated by the NYSE. Rather, he seeks to use a state statute, namely California's Unfair Competition Law, as a vehicle to hold Defendants liable for misleading and deceptive practices associated with the sale and marketing of callable CDs. Whether he can prove the allegations of the complaint that the term "callable CD" is a "misleading moniker" is not before us. If the plaintiff can stay in state court, and if he can prove the allegations of fraud and "inherently misleading" conduct, there will be time enough for some other court to consider whether the defendants have a defense on the merits.
 
 
 45
 We recognize that at certain points, the complaint reads somewhat like an attack on the fiscal soundness of callable CDs. For instance, the complaint refers to them as "no-win propositions" and "grossly disadvantageous and unsuitable investments" that impose "loss[es] far greater than any penalty ever assessed upon early withdrawal of a traditional CD." As discussed above, though, we read the complaint not to challenge the NYSE's decision to allow brokerage firms to sell callable CDs, nor to rest upon the violation of any federal securities law or exchange rule or regulation. We cannot allow Defendants' attempt to expand the scope of § 27 in a manner that vitiates state law remedies expressly preserved by § 28. That the specific goal of protecting California customers from dishonest business practices, whether by brokers or otherwise, may comport with the broader regulatory goals of the Exchange Act and certain NYSE rules and regulations is not enough to sweep Lippitt's complaint within the exclusive jurisdictional ambit of § 27.[6]
 
 
 46
 In ARCO, the plaintiff brought a public access claim in state court requesting information about a Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) controlled environmental site. Even though the plaintiff's suit arose under a state public access statute, the defendant removed, contending that the district court had "exclusive original jurisdiction over all controversies arising under [CERCLA]." Id. at 1115. We disagreed, holding that because plaintiff's suit did not challenge a statutory cleanup requirement or environmental standard, it did not amount to a controversy arising under CERCLA. Id. at 1116. Similarly, even though Lippitt's complaint implicates a federally regulated security, it does not directly challenge a right or liability under the Exchange Act — it merely challenges Defendants' purportedly deceptive sales tactics under California state law. See Sparta, 159 F.3d at 1212 (common law claim based on violation of NASD rules was essentially an action brought to enforce a liability and/or duty created by exchange rules and therefore fell within the scope of § 27).
 
 
 47
 Even if federal law does not completely preempt Lippitt's UCL claim and the claim falls outside the reach of § 27, federal subject matter jurisdiction may still exist if the claim is an "inherently federal claim" articulated in state-law terms, Brennan, 134 F.3d at 1409, or "the right to relief depends on the resolution of a substantial, disputed federal question," ARCO, 213 F.3d at 1114. Defendants rely heavily on Sparta, supra, and D'Alessio v. New York Stock Exchange, Inc., 258 F.3d 93 (2d Cir.2001), to support these theories. Read properly, however, both these cases support our decision that federal jurisdiction does not exist over Lippitt's state law claim.
 
 
 48
 The controversy underlying the dispute in Sparta arose after the NASD temporarily suspended trading of the plaintiff's stock, without explanation, during its secondary public offering. 159 F.3d at 1211. Because the halt in trading resulted in an unsuccessful offering, Sparta sued the NASD in state court and alleged several common law violations, including breach of contract, breach of the covenant of good faith and fair dealing, gross negligence, economic interference, and misrepresentation. Id. The NASD successfully removed the case to federal court and we affirmed because the plaintiff's claims were "founded on the [NASD's] conduct in suspending trading and de-listing the offering, the propriety of which must be exclusively determined by federal law." Id. at 1212. In Sparta, the NASD had no external obligations (such as a state statute, an independent contract, or even public policy) to govern its decision to suspend trading during an offering — it merely had to comply with its internal rules issued pursuant to the Exchange Act. Id. Federal jurisdiction existed because the plaintiff attempted to build his edifice of state law claims upon a foundation comprised of NASD rules and regulations.
 
 
 49
 The plaintiff in D'Alessio made a similar mistake. In that case, plaintiff D'Alessio sued the NYSE in state court after the SEC dropped its criminal indictment against him for purportedly engaging in illegal trading schemes on the market floor. 258 F.3d at 97. In support of his state law claims for breach of contract, injurious falsehood and concealment, fraudulent deceit, and negligent misrepresentation, D'Alessio alleged that the NYSE and its officers, in violation of exchange rules and regulations, conspiratorially provided false directives to its floor traders to increase illegally the volume of trades on its exchange floor so as to collect greater fees. Id. D'Alessio also alleged that the NYSE impugned his reputation with SEC investigators to curry favor and cover up its own illegal activities. Id.
 
 
 50
 The court of appeals framed the issue as "whether the instant action implicate[d] a federal interest sufficient to sustain removal of the action to federal court ..." Id. at 98. A sufficient federal interest existed in D'Alessio's case because the "gravamen" of his claims required a finding that the NYSE violated the federal securities laws by "fail[ing] to perform its statutory duty, created under federal law, to enforce its members' compliance with those laws." Id. at 101 (emphasis in original). Because a determination about "the propriety of the NYSE's actions, as prescribed under federal law, [was] at the heart of D'Alessio's allegations," the case properly belonged in federal court. Id. at 103.
 
 
 51
 Unlike the situations in Sparta or D'Alessio, a state court need not inquire into NYSE regulations, or even refer to federal law, in the case before us. Whether the Defendants' sales and marketing practices associated with callable CDs violate federal law is not material to Lippitt's UCL claim — the viability of the claim arises from a specific state statute. It in no manner arises from any NYSE regulation. Furthermore, Lippitt's claim does not amount to a challenge of the NYSE's decision to allow the sale of callable CDs, nor does it suggest that such an allowance goes beyond the scope of its regulatory powers as delegated by the Exchange Act. See Brennan, 134 F.3d at 1409-11 (plaintiff brought § 17200 claim to recover surcharges wrongfully collected by airlines; even though surcharges did not fit formal definition of a tax, removal was proper because plaintiff's claim amounted to a tax refund suit within exclusive jurisdiction of federal court). Finally, the claim does not require a court to make an independent assessment about whether Defendants violated exchange rules or regulations. See Barbara v. NYSE, 99 F.3d 49, 54-55 (2d Cir.1996) (no subject matter jurisdiction where plaintiff's claims required a court to use "ordinary principles of contract law" to determine whether NYSE disciplinary proceedings comported with its own internal rules).
 
 
 52
 Furthermore, Lippitt's right to relief does not depend on the resolution of a substantial, disputed federal question. Courts have fashioned a number of proxies to determine whether a state claim depends on the resolution of a federal question to such an extent as to trigger subject matter jurisdiction. Is the federal question "basic" and "necessary" as opposed to "collateral" and "merely possible"? Gully v. First National Bank, 299 U.S. 109, 118, 57 S.Ct. 96, 81 L.Ed. 70 (1936). Is the federal question "pivotal" as opposed to merely "incidental"? Hunter, 746 F.2d at 646. Is the federal question "direct and essential" as opposed to "attenuated"? Smith v. Grimm, 534 F.2d at 1346, 1350-51 (9th Cir.1976).
 
 
 53
 Lippitt's UCL claim is a standard consumer protection claim that challenges the methods used by Defendants when selling and marketing callable CDs. To prevail, Lippitt need only show that the brokers engaged in "any unlawful, unfair, or fraudulent business act or practice" or any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof.Code § 17200. As stated above, Lippitt need not depend on the violation of federal law to bring his UCL claim. There is no "basic" or "pivotal" federal question that impinges on his right to relief. See Roskind, 165 F.Supp.2d at 1067 (no federal jurisdiction existed because plaintiff's state claims depended on the scope of defendant's fiduciary duty as defined by state law and not NASD rules). Cf. Myers v. Merrill Lynch, 1999 WL 696082 *5, n. 7 (N.D.Cal. 1999) (plaintiff brought an action under § 17200 based on defendant's practice of arbitrary penalties against individual investors; removal was proper because "propriety of defendant's practice ... turn[ed] exclusively on the interpretation of federal securities laws and regulations").[7]
 
 
 54
 C. No Private Right of Action Under Federal Law
 
 
 55
 We note Lippitt's final argument that the absence of a private right of action in federal court for the violation of an NYSE rule or regulation compels remand of his case back to state court. See In re Veri-Fone Securities Litigation, 11 F.3d 865, 870 (9th Cir.1993). Circuit precedent precludes this argument. We have found no case holding that the want of a federal remedy creates an automatic right to a remand of a removed claim to state court. Cf. Utley v. Varian Associates, Inc., 811 F.2d 1279, 1286 (9th Cir.1987); see also Barbara, 99 F.3d at 54 (the lack of a private right of action generally counsels against the finding of federal question jurisdiction). However, we have also held that if a claim falls under the purview of § 27 of the Exchange Act, then the plaintiff must submit to federal jurisdiction even if no private right of action exists in federal court. See Sparta, 159 F.3d at 1212 (because federal jurisdiction springs from 15 U.S.C. § 78aa and not 28 U.S.C. § 1331, lack of private right is irrelevant). We see no need to depart from the rule. As discussed above, Lippitt's UCL claim does not belong in federal court, whether through § 27 or otherwise, and therefore § 27 exclusivity does not apply.
 
 III. CONCLUSION
 
 56
 For the foregoing reasons, the district court erred in denying Lippitt's motion to remand. During oral argument, Lippitt's counsel stated that his client would not amend the complaint to add a federal claim upon remand of the action to state court. We remand in reliance that Lippitt will adhere to this promise, as well as to the characterization of the complaint which he offered to us, since judicial estoppel "bars a party from taking inconsistent positions in the same litigation." United States v. Baird-Neece Packing Corp., 151 F.3d 1139, 1147 (9th Cir.1998).
 
 
 57
 The district court's order is REVERSED, with instructions to remand the removed action to state court.
 
 
 
 Notes:
 
 
 [1]
 By "Defendants," we refer to: R.J. Financial Services, Inc., First Union Securities, Inc., Morgan Stanley Dean Witter & Co., Salomon Smith Barney Inc., A.G. Edwards & Sons, Inc., Edward D. Jones & Co., LP, Providian Financial Corp., Prudential Securities, Inc., E*Trade Group Inc., and U.S. Bancorp Piper Jaffray, Inc. Although named in Lippitt's complaint, Providian Financial Corp. is not a brokerage firm and therefore is not subject to the rules promulgated by the New York Stock Exchange. Nevertheless, it consented to Defendants' removal of the case to federal district court
 
 
 [2]
 Of the six federal securities acts, the 1934 Exchange Act is the only one that provides for exclusive federal jurisdiction over private civil actions — the other five provide for concurrent state and federal jurisdiction. In chronological order of their passage, the jurisdictional provisions are as follows: Securities Act of 1933, § 22(a), codified at 15 U.S.C. § 77v(a); Securities Exchange Act of 1934, § 27, codified at 15 U.S.C. § 78aa; Public Utility Holding Company Act of 1935, § 25, codified at 15 U.S.C. § 79y; Trust Indenture Act of 1939, § 322(b), codified at 15 U.S.C. § 77vvv; Investment Company Act of 1940, § 44, codified at 15 U.S.C. § 80a-43; Investment Advisers Act of 1940, § 214, codified at 15 U.S.C. § 80b-14
 
 
 [3]
 "The term `exchange' means any organization, association, or group of persons, whether incorporated or unincorporated, which constitutes, maintains, or provides a market place or facilities for bringing together purchasers and sellers of securities or for otherwise performing with respect to securities the functions commonly performed by a stock exchange as that term is generally understood, and includes the market place and the market facilities maintained by such exchange." 15 U.S.C. § 78c(a)(1)
 
 
 [4]
 Jones & Co. is not the only broker that an SRO has disciplined for roguish practices associated with the sale of callable CDs. For instance, individual brokers in Ohio, Massachusetts, and Pennsylvania were recently disciplined by the NASD for misleading their customers about the maturity periods of callable CDs, the call feature, and their ability to resell in a secondary marketSee National Association of Securities Dealers, Inc. Disciplinary Actions, 2002 WL 31548129 *17-18 (Nov.2002) and National Association of Securities Dealers, Inc. Disciplinary Actions, 2002 WL 31827874 *15 (Dec.2002).
 
 
 [5]
 A third category of cases involves a defense of federal preclusion or federal res judicataSee Sullivan, 813 F.2d at 1375 (9th Cir.1987) (interpreting Federated Dept. Stores v. Moitie, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)). This category involves a unique factual posture that does not apply in the present appeal.
 
 
 [6]
 Some courts have recognized that there is little legislative history to explain the purpose of Section 27's grant of exclusive federal jurisdictionSee, e.g., Calvert Fire Ins. Co. v. American Mutual Reinsurance Co., 600 F.2d 1228, 1235, n. 16 (7th Cir.1979). But see McClure v. Borne Chem. Co., 292 F.2d 824, 833 (3d Cir.1961) ("That congress intended uniform enforcement of rights arising under The Securities Exchange Act of 1934 is indicated strongly by the fact that it gave exclusive jurisdiction to the United States courts of any suit brought to enforce the duties or liabilities created by the Act.")
 
 
 [7]
 Defendants contend that this Court has affirmed the district court's reasoning inMyers v. Merrill Lynch & Co., 249 F.3d 1087 (9th Cir.2001). Strictly speaking, it did not. This Court affirmed the denial of remand, stating that it agreed with the district court's reasoning on the issue of whether plaintiff's claims were preempted by the National Securities Market Improvement Act, a statute that is not implicated by Lippitt's complaint. See Myers, 249 F.3d at 1088.